David S. Douglas (DD-6250)
GALLET DREYER & BERKEY, LLP
845 Third Avenue, 8th Floor
New York, New York 10022
(212) 935-3131
Attorneys for Defendants
Nationwide Management Inc.,
Benjamin Osiashvili, Mikael
Osiashvili, Svetlana Osiashvili,
and Alex Vayner

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SKY MEDICAL SUPPLY INC.,

                          Plaintiff,

                                                    12 Civ. 6383 (JFB) (AKT)

            -against-

SCS SUPPORT CLAIMS SERVICES, INC., et al.,

                          Defendants.
------------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THE NATIONWIDE DEFENDANTS' MOTION TO DISMISS**



**GALLET DREYER & BERKEY, LLP
845 Third Avenue, 8th Floor
New York, New York 10022
(212) 935-3131**

**Attorneys for Defendants
Nationwide Management Inc.,
Benjamin Osiashvili, Mikael Osiashvili,
Svetlana Osiashvili, and Alex Vayner**

## **TABLE OF CONTENTS**

Table of Authorities ............................................................................... iii

Preliminary Statement ............................................................................ 1

ARGUMENT ............................................................................................ 2

PONT I      PLAINTIFF'S RICO CLAIMS CANNOT SURVIVE AS
                A MATTER OF LAW, FOR MULTIPLE REASONS ..................... 2

              A.  Plaintiff Has Failed to Allege a Predicate
                  Act of "Racketeering Activity" ........................................... 3

              B.  Defendants' Alleged Acts Were Not the
                  Proximate Cause of Injury to Plaintiff ............................. 5

              C.  Contract-Based Claims Cannot
                  Be Converted into RICO Claims ........................................ 6

              D.  The RICO Conspiracy Claim
                  Fails as Matter of Law ...................................................... 7

              E.  This Court Has Already Rejected
                  Nearly Identical RICO Claims ........................................... 8

              F.  The RICO Claims Are Largely,
                  If Not Entirely, Time-Barred ............................................ 10

PONT II     PLAINTIFF IMPLICITLY CONCEDES THAT, UPON
                DISMISSAL OF THE RICO CLAIMS, THE COURT SHOULD
                NOT EXERCISE SUPPLEMENTAL JURISDICTION
                OVER PLAINTIFF'S STATE LAW CLAIMS ............................ 11

PONT III    THE DECLARATORY JUDGMENT THAT PLAINTIFF
                SEEKS IS INAPPROPRIATE, FOR MULTIPLE REASONS ........ 12

POINT IV     PLAINTIFF'S COMMON-LAW FRAUD CLAIM
CANNOT SURVIVE AS A MATTER OF LAW,
FOR MULTIPLE REASONS............................................................14

POINT V     PLAINTIFF'S "UNJUST ENRICHMENT" CLAIM FAILS
AS A MATTER OF LAW, FOR MULTIPLE REASONS.............16

POINT VI     PLAINTIFF'S THIRTEENTH CAUSE OF ACTION FAILS
AS A MATTER OF LAW, FOR MULTIPLE REASONS.............19

POINT VII     THE COMPLAINT DOES NOT ASSERT -- AND AS
A MATTER OF LAW CANNOT VALIDLY ASSERT --
THAT PATIENT FOCUS'S CORPORATE VEIL
SHOULD BE PIERCED ...............................................................21

POINT VIII   GIVEN PLAINTIFF'S ADMISSION AND THE ACTUAL
ALLEGATIONS OF THE COMPLAINT, NO CLAIM
CAN BE ASSERTED AGAINST ALEX VAYNER.......................23

CONCLUSION.........................................................................................24

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

<u>Abbott Laboratories v. Gardner</u>,
387 U.S. 148, 87 S. Ct. 1507 (1967)................................................................13

<u>Allstate Insurance Co. v. Lyons</u>,
843 F. Supp. 2d 358 (2012) ........................................................................5

<u>Amalfitano v. Rosenberg</u>,
12 N.Y.3d 8, 903 N.E.2d 265, 874 N.Y.S.2d 868 (2009)................................14

<u>Automatic Findings, Inc. v. Miller</u>,
232 A.D.2d 245, 648 N.Y.S.2d 90 (1st Dept. 1996) ........................................20

<u>Beck v. Prupis</u>,
529 U.S. 494, 120 S. Ct. 1608 (2000).............................................................7

<u>Benson v. Boston Old Colony Insurance Co.</u>,
134 A.D.2d 214, 521 N.Y.S.2d 14 (1st Dept. 1987) ........................................20

<u>Bernstein v. Misk</u>,
948 F. Supp. 228 (E.D.N.Y. 1997) .................................................................7

<u>Bridge v. Phoenix Bond & Indemnity Co.</u>,
553 U.S. 639, 128 S. Ct. 2131 (2008)...........................................................6

<u>Brooke v. Schlesinger</u>,
898 F. Supp. 1076 (S.D.N.Y. 1995) ...........................................................4, 8

<u>Burke v. Dowling</u>,
944 F. Supp. 1036 (E.D.N.Y. 1995) ...............................................................8

<u>Channel Master Corp. v. Aluminum Ltd. Sales, Inc.</u>,
4 N.Y.2d 403, 151 N.E.2d 833, 176 N.Y.S.2d 259 (1958)................................14

<u>Chester Med. Diagnostic, P.C. v. Kemper Cas. Ins.</u>,
21 Misc. 3d 1108(A), 873 N.Y.S. 232 (N.Y.C.Civ. Ct. 2008) .........................20

<u>Commercial Cleaning Service Systems, LLC v. Colin Service Systems, Inc.</u>,
271 F.3d 374 (2d Cir. 2001) ........................................................................5

Com-Tech Associates v. Computer Associates International, Inc.,
753 F. Supp. 1078 (E.D.N.Y. 1990), aff'd, 938 F.2d 1574 (2d Cir. 1991) ........................8

Conte v. County of Nassau,
2013 WL 3878738 (E.D.N.Y. 2013) ........................................................................20

D.R.S. Trading Co. v. Fisher,
2002 WL 1482764 (S.D.N.Y. 2002)...........................................................................7

FD Property Holding, Inc. v. U.S. Traffic Corp.,
206 F. Supp. 2d 362 (E.D.N.Y. 2002) ........................................................................8

First Capital Asset Management, Inc., v. Satinwood, Inc.,
385 F.3d 159 (2d Cir. 2004) ......................................................................................7

First Nationwide Bank v. Gelt Funding Corp.,
27 F.3d 763 (2d Cir. 1994) ........................................................................................5

George Malone & Co., Inc. v. Rieder,
19 N.Y.3d 511, 973 N.E.2d 743, 950 N.Y.S.2d 333 (2012)................................17

Hecht v. Commerce Clearing House, Inc.,
897 F.2d 21 (1990) ...........................................................................................6, 8

Hemi Group LLC v. City of New York, New York,
559 U.S. 1, 130 S. Ct. 983 (2010)..............................................................................6

Holmes v. Securities Investor Protection Corp.,
503 U.S. 258, 112 S. Ct. 1311 (1992)........................................................................5

IMR Associates, Inc. v. C.E. Cabinets, Ltd.,
2007 WL 1395547 (E.D.N.Y. 2007) ........................................................................20

Issacs v. Bowen,
865 F.2d 468 (2d Cir. 1989) ....................................................................................13

Kagan v. K-Tel Entertainment, Inc.,
172 A.D.2d 375, 568 N.Y.S.2d 756 (1st Dept. 1991). ...........................................17

Koch v. Christie's International, PLC,
699 F.3d 141 (2d Cir. 2012) ................................................................................10, 11

Lerner v. Fleet Bank, N.A.,
459 F.3d 273 (2d Cir. 2006) ......................................................................................6

Lombard v. Economic Development Administration of Puerto Rico,
1998 WL 273093 (S.D.N.Y. 1998)............................................................................17

Lundy v. Catholic Health System of Long Island, Inc.,
711 F.3d 106 (2d Cir. 2013) ......................................................................................9

Malin v. XL Capital, Ltd.,
312 F. App'x 400 (2d Cir. 2009)..............................................................................11

Mandarin Trading Ltd. v. Wildenstein,
16 N.Y.3d 173, 944 N.E.2d 1104, 919 N.Y.S.2d 465 (2011)...........................17

Mandarino v. Travelers Property Casualty Insurance Co.,
37 A.D.3d 775, 831 N.Y.S.2d 452 (2d Dept. 2007) ..........................................20

McGee v. Allstate,
2011 WL 3497527 (E.D.N.Y. 2011) ......................................................................16

McGee v. State Farm Mutual Automobile Insurance Co.,
2009 WL 2132439 (E.D.N.Y. 2009) ........................................................... 7, 8-9

McLaughlin v. America Tobacco Co.,
522 F.3d 215 (2d Cir. 2008) ....................................................................................10

Mills v. Polar Molecular Corp.,
12 F.3d 1170 (2d Cir. 1993) ......................................................................................5

Moore v. Painewebber, Inc.,
189 F.3d 165 (2d Cir. 1999) ......................................................................................5

Morris v. N.Y. State Dep't of Taxation and Fin.,
623 N.E.2d 1157 (N.Y. 1993)...................................................................................22

Network Enters. Inc. v. Reality Racing, Inc.,
2010 WL 3529237 (S.D.N.Y.2010)........................................................................19

Panam Management Group, Inc. v. Pena,
2011 WL 3423338 (E.D.N.Y. 2011) .................................................................22, 23

Premium Mortage Corp. v. Equifax, Inc.,
583 F.3d 103 (2d Cir. 2009) ....................................................................................15

Romanello v. Intesa Sanpaolo, S.p.A.,
97 A.D.3d 449, 949 N.Y.S.2d 345 (1st Dept. 2012) .........................................20

Rottella v. Wood,
528 U.S. 549, 120 S. Ct. 1075 (2000)..........................................................................10, 11

Simmonds v. Immigration and Naturalization Service,
326 F.3d 351 (2d Cir. 2003) ................................................................................. 12-13

Sukup v. State,
19 N.Y.2d 519, 227 N.E.2d 842, 281 N.Y.S.2d 28 (1967)............................................20

Sperry v. Crompton Corp.,
8 N.Y.3d 204, 863 N.E.2d 1012, 831 N.Y.S.2d 760 (2007)............................................17

Spira v. Nick,
876 F. Supp. 553 (S.D.N.Y. 1995) ...............................................................................4

S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.,
84 F.3d 629 (2d Cir. 1996) ........................................................................................4

State Farm Mutual Automobile Insurance Co. v. Grafman,
655 F. Supp. 2d 212 (E.D.N.Y. 2009) .........................................................................15

UFCW Local 1776 v. Eli Lilly and Co.,
620 F.3d 121 (2nd Cir. 2010)......................................................................................6

U.S. v. Bortnovsky,
879 F.2d 30 (2d Cir. 1989) ........................................................................................4

Vertex Const. Corp. v. T.F.J. Fitness L.L.C.,
2011 WL 5884209 (E.D.N.Y. 2011) ......................................................................17, 19

Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,
933 F.2d 131 (2d Cir. 1991) ..................................................................................22-23


Statutes and Rules

18 U.S.C. § 1962 (c) ...................................................................................................7

18 U.S.C. § 1962 (d) ..................................................................................................7

Fed. R. Civ. P. 9(b) ...................................................................................................4

David S. Douglas (DD-6250)
GALLET DREYER & BERKEY, LLP
845 Third Avenue, 8th Floor
New York, New York 10022
(212) 935-3131
Attorneys for Defendants
Nationwide Management Inc.,
Benjamin Osiashvili, Mikael
Osiashvili, Svetlana Osiashvili,
and Alex Vayner

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SKY MEDICAL SUPPLY INC.,

                        Plaintiff,

                                                    12 Civ. 6383 (JFB) (AKT)

        -against-

SCS SUPPORT CLAIMS SERVICES, INC., et al.,

                        Defendants.
-------------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE NATIONWIDE DEFENDANTS' MOTION TO DISMISS

### Preliminary Statement

In the reams of paper and data storage space that plaintiff Sky Medical has taken up vainly seeking to counter the motions to dismiss that the Nationwide Defendants and the other defendants have filed, perhaps what jumps off the page and screen most vividly is something that is totally absent from such attempted opposition:  Nowhere does plaintiff even endeavor to try to address one of the most basic, and inescapable, of the many logical and legal flaws that doom this "fraud" suit:  None of the asserted false statements in peer review and IME reports were intended to deceive Sky Medical; Sky

Medical was not in fact deceived by any such statements; and Sky Medical did not rely upon any such statements. Indeed, as a matter of logic, the statements in such reviews and reports could not have caused Sky Medical to be deceived by, or have relied upon, them, as the statements were not made until <u>after</u> Sky Medical had already supplied its medical equipment to the insurance companies' insureds. Thus, there could not conceivably have been "fraud" by the Nationwide Defendants that caused any injury to plaintiff. In its opposition papers, Sky Medical does not even try to counter this fundamental defect of its suit, nor could Sky Medical have done so even if it had tried.

Plaintiff likewise cannot counter the myriad other failings of its RICO and common-law claims, including the lack of proximate causation; the failure to satisfy Rule 9(b); the legal insufficiency of plaintiff's RICO conspiracy claim; the time bar under the standards that the United States Supreme Court has established for RICO claims; the principles that limit the exercise of supplemental jurisdiction and constrain declaratory judgment actions; and the additional substantive flaws of plaintiff's fraud, unjust enrichment, and tortious interference claims.

For each of these reasons, plaintiff's implausible and legally deficient allegations entirely fail as a matter of law, and the complaint should be dismissed in its entirety as against each of the Nationwide Defendants.

<u>ARGUMENT</u>

POINT I

PLAINTIFF'S RICO CLAIMS CANNOT SURVIVE AS
<u>A MATTER OF LAW, FOR MULTIPLE REASONS</u>

In the Nationwide Defendants' moving papers, we demonstrated how plaintiff's RICO claims failed to satisfy the RICO statute's stringent requirements in a variety of

respects.  In its opposition, plaintiff wholly ignores certain of such failures, and its efforts to address other of its failings are entirely unconvincing, attempting, for instance, to sidestep the actual allegations of plaintiff's own complaint and RICO Statement as well as the governing case law.

A.    Plaintiff Has Failed to Allege a Predicate Act of "Racketeering Activity"

Plaintiff's RICO claims are predicated upon plaintiff's allegation that defendants (as a whole, and undifferentiated) committed "fraud" through the use of the mails and wires to send supposedly false peer review and IME reports to insurers.  The mere making of allegedly false statements does not, however, in and of itself constitute "fraud."  "Fraud", as a legal matter, does not exist merely in the ether.

As discussed in our moving brief (Def. Br. at 7, 17-18), Sky Medical has entirely failed to plead any intent by the Nationwide Defendants -- or, for that matter, any of the other defendants -- to deceive Sky Medical or that Sky Medical take any steps in reliance upon any statement by any of the Nationwide Defendants.  Moreover, even placing the missing, necessary element of intent to one side, Sky Medical did not supply any medical equipment, or undertake any other actions, in reliance upon anything that the Nationwide Defendants did or did not do or say.  Nor could Sky Medical have done so as a matter of logic: The reviews and reports pertaining to given insureds were not made until <u>after</u> Sky Medical had already supplied medical equipment to those individuals.  The reviews and reports thus could not conceivably have caused Sky Medical to supply such equipment.

Tellingly, nowhere in plaintiff's opposition does Sky Medical even attempt to counter these fundamental legal and logical flaws that entirely undermine this suit. Nor could it.

Furthermore, even if plaintiff's assertion of predicate acts of "fraud" were legally and logically plausible -- which, as shown, they are not -- plaintiff cannot overcome the multiple other failings pertaining to the "predicate act" requirement of any RICO claim against the Nationwide Defendants.  For instance, as pointed out in our opening brief, none of the Nationwide Defendants is even identified as a participant in any supposed predicate act.  Paragraph 5(b) of the RICO Case Statement that the Court directed plaintiff to file ordered plaintiff to identify, inter alia, "the participants in each predicate act."  None of the Nationwide Defendants is identified as participating in any supposed predicate act.  Indeed, neither ¶ 5(b) nor any of the exhibits that it references even mention any of the Nationwide Defendants.[1]

Plaintiff also falls far short of satisfying Fed. R. Civ. P. 9(b)'s particularity requirement.  Not only does Sky Medical fail to identify any of the Nationwide Defendants as a participant in any predicate act, but the amended complaint, the so-called "predicate acts charts" annexed to it (Exhibits 1, 6), and the RICO Case Statement each fail to identify a single specific statement by any of the Nationwide Defendants, in direct contravention of both the general directive of the Second Circuit and this Court's specific

---

[1]  Plaintiff takes the position that the Nationwide Defendants could conceivably be liable for participating in "mail fraud" even if they did not personally use the mails.  That, however, is entirely irrelevant.  Sky Medical has not even alleged that the Nationwide Defendants participated in mail fraud or any other predicate act.

Moreover, many of the cases that plaintiff cites (Pl. Br. at 4-5) undermine its position.  In S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629 (2d Cir. 1996), the Second Circuit upheld the dismissal of plaintiff's RICO and common-law fraud claims.  Similarly, in Brooke v. Schlesinger, 898 F. Supp. 1076 (S.D.N.Y. 1995), the court dismissed a RICO claim against one of the defendants for failure adequately to plead predicate acts of mail or wire fraud against him.  Spira v. Nick, 876 F. Supp. 553 (S.D.N.Y. 1995), dismissed each of the RICO and common-law fraud claims asserted.  U.S. v. Bortnovsky, 879 F.2d 30 (2d Cir. 1989), concerned a criminal conviction, not a civil RICO claim against defendants who are not even alleged to have participated in a predicate act.

directive in this case.  See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.

1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged

fraudulent statements to 'defendants'"); RICO Case Statement ¶ 5(c).[2]  In like vein, even

throughout plaintiff's opposition brief, plaintiff repeatedly continues improperly to

attribute supposed wrongful acts not to particular defendants, but to merely to

"Defendants" generally and without specification.

B.     Defendants' Alleged Acts Were Not the Proximate Cause of Injury to Plaintiff

       Plaintiff does not, and cannot, dispute that there is absolutely no connection

between Sky Medical and any of the Nationwide Defendants.  Plaintiff does not, and

cannot, dispute that the Nationwide Defendants do not owe any duty to Sky Medical.

Plaintiff does not, and cannot, dispute that, without exception, civil RICO claims are not

viable absent not only "but for", but legal, proximate causation.  Holmes v. Securities

Investor Protection Corp., 503 U.S. 258, 268, 112 S. Ct. 1311 (1992); Commercial

Cleaning Service Systems, LLC v. Colin Service Systems, Inc., 271 F.3d 374, 380 (2d

Cir. 2001).  Indeed, plaintiff concedes the necessity of such causation.  (Pl. Br. at 6, citing

First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994).

       No proximate causation exists here, for at least two reasons.  First, as already

discussed, Sky Medical undertook to provide medical supplies to insureds prior to the

---

[2]  Moore v. Painewebber, Inc., 189 F.3d 165 (2d Cir. 1999), and Allstate Insurance Co. v.
Lyons, 843 F. Supp. 2d 358 (2012), which plaintiff cites (Pl. Br. at 4) as asserted support for its
pleading, actually support the Nationwide defendants' motion and illustrate the insufficiency of
plaintiff's amended complaint.  In Moore, "the persons responsible for the allegedly fraudulent
statements are identified" in the chart annexed to the complaint.  189 F.3d at 173.  In Lyons, the
court, citing Moore, similarly observed that the complaint must "identify those responsible for the
statements" and the chart annexed to that complaint likewise did so.  Here, while the charts that
Sky Medical has annexed to its complaint identify the makers of the allegedly fraudulent
statements, according to plaintiff's charts themselves, none of those statements were made by the
Nationwide Defendants, who are nowhere even mentioned in the charts.

issuance of any peer review or IME reports by any of the defendants. The assertion that something that occurred later in time somehow "caused" a step undertaken previously makes no sense whatsoever.

Second, it was the various insurers' separate, independent, intervening decisions to deny payment to Sky Medical for the provision of medical supplies that the insurers decided were not medically necessary for those insurers' various individual insureds that caused Sky Medical's claimed "injury", both as matter of "but for" and proximate causation. Any connection between such "injury" and any actions by any of the defendants -- no less any of the Nationwide Defendants, whose supposed actions plaintiff, as discussed above, has not even specified -- is simply too remote and attenuated to constitute the requisite, "stringent" proximate causation that the Second Circuit has mandated in RICO cases. Lerner v. Fleet Bank, N.A., 459 F.3d 273, 285 (2d Cir. 2006).[3]

C.     Contract-Based Claims Cannot Be Converted into RICO Claims

Any conceivable rights that Sky Medical has are directly as a result of its contractual relations. Specifically, plaintiff is the (alleged) contractual assignee of claims that are being pressed pursuant to insurance contracts entered into by various individuals with various insurance companies. If not for plaintiff's contractual rights under those

---

[3] Once again, the cases that plaintiff cites illustrate the fallacy of its position. In Hecht v. Commerce Clearing House, Inc., 897 F.2d 21 (1990), the Second Circuit affirmed the dismissal of RICO claims for lack of proximate causation. The decision in Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 658, 128 S. Ct. 2131, 2144 (2008), expressly noted that, contrary to the instant case, "there are no independent factors that account for [plaintiffs'] injury." In UFCW Local 1776 v. Eli Lilly and Co., 620 F.3d 121 (2nd Cir. 2010), the Second Circuit held that defendants' representations were not either the but-for nor proximate causation for the plaintiffs' claimed injuries and that plaintiffs' theory was "too attenuated to 'meet RICO's requirement of a direct causal connection between the predicate offense and the alleged harm'" (quoting Hemi Group, LLC v. City of New York, New York, 559 U.S. 1, 10-11, 130 S. Ct. 983, 990 (2010)).

contracts, plaintiff would have no rights whatsoever. Additionally, the sole link between defendants and the insurers are alleged contracts between SCS and the insurers.

Thus, at bottom, what plaintiff is seeking is to convert plaintiff's contractually-based remedies into RICO claims. This, as the cases cited in Point I(C) of our moving brief (Def. Br. at 9-10) confirm, is not appropriate. That plaintiff did not have a direct contractual relationship with the defendants does not change this reality. In cases such as D.R.S. Trading Co. v. Fisher, 2002 WL 1482764 (S.D.N.Y. 2002), and Bernstein v. Misk, 948 F. Supp. 228 (E.D.N.Y. 1997), there likewise was no contract between the plaintiff and the named defendants, yet the court nonetheless barred as improper the plaintiff's attempt to turn a dispute grounded upon contractual relations into fraud-based RICO claims.[4]

D.      The RICO Conspiracy Claim Fails as Matter of Law

In its opposition, Sky Medical entirely ignores the well-settled law that mandates that where, as here, a plaintiff has failed to put forth legally viable substantive RICO claims under § 1962(c), its claims of a RICO "conspiracy" under § 1962(d) automatically fall as well. Beck v. Prupis, 529 U.S. 494, 120 S. Ct 1608 (2000); First Capital Asset Management, Inc., v. Satinwood, Inc., 385 F.3d 159, 182 (2d Cir. 2004); McGee v. State Farm Mutual Automobile Insurance Co., 2009 WL 2132439, *4 (E.D.N.Y. 2009) ("McGee I").

Furthermore, as demonstrated in the Nationwide Defendants' moving papers, plaintiff's RICO conspiracy claims, which are nothing more than nearly identical re-

---

[4] Curiously, plaintiff states that the Nationwide Defendants cite Bernstein to "decry[] the use of 'conclusory allegations' of mail fraud." (Pl. Br. at 5). While such conclusory allegations are in fact improper, nowhere in their brief do the Nationwide Defendants cite Bernstein for that proposition.

hashes of plaintiff's legally insufficient § 1962(c) claims, are the epitome of the "conclusory add-on[s]" that cases such as FD Property Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002), proscribed.  See also, e.g., Com-Tech Associates v. Computer Associates International, Inc., 753 F. Supp. 1078, 1092 (E.D.N.Y. 1990), aff'd, 938 F.2d 1574 (2d Cir. 1991).[5]

E.      This Court Has Already Rejected Nearly Identical RICO Claims

Sky Medical's strained effort to distance itself from the nearly identical McGee I suit that this Court previously dismissed entirely fails to convince.  In McGee I, exactly as here, a medical services provider alleged that the defendants had engaged in a fraudulent conspiracy to deny him reimbursement for medical services that he provided to no-fault patients.  Exactly as here, the fraud alleged entailed the preparation of purportedly fraudulent peer review and IME reports concluding that the plaintiff's services were medically unnecessary.  Exactly as here, the plaintiff in McGee I asserted that the supposed fraud and conspiracy violated RICO.

Exactly as the Court should do here, the Court in McGee I dismissed the plaintiff's RICO claim, holding that the situation alleged "falls far short of [the] standard" required for a RICO case.  Exactly as with respect to the Nationwide Defendants here, the plaintiff failed to identify any specific fraudulent statements.  Exactly as here, the plaintiff failed to show that he or anyone else was actually deceived by any statement in anything that a defendant had supposedly sent through the mails or wires.

---

[5] Once more, the cases upon which plaintiff attempts to rely in fact largely undercut its position.  E.g., Hecht, 897 F.3d 21(affirming dismissal of RICO claims); Com-Tech Associates, 753 F. Supp. 1078 (RICO conspiracy dismissed as non-viable); Brooke, 898 F. Supp. 1076 (dismissing RICO claim against one of defendants); Burke v. Dowling, 944 F. Supp. 1036, 1068-69 (E.D.N.Y. 1995) (dismissing RICO conspiracy claims as to two defendants against whom substantive RICO claims failed).

Sky Medical tries vainly to distinguish the identical situation that <u>McGee I</u>

presented by asserting that the complaint in <u>McGee I</u> did not contain the equivalent of the

charts that constitute Exhibits 1 and 6 to Sky Medical's amended complaint.  But nothing

in those charts washes away the reality that nowhere in Sky Medical's complaint, in its

RICO Case Statement, or in those charts themselves is there any support for any plausible

suggestion that Sky Medical or anyone else was actually deceived by any statement by

any of the defendants[6], no less any of the Nationwide Defendants.  Nor can Sky Medical

wish away the fact nowhere in those charts does Sky Medical even mention any of the

Nationwide Defendants, no less identify any of the Nationwide Defendants as a maker of

any of the listed purportedly false statements.[7]

---

[6] In its brief, Sky Medical states that plaintiff has supposedly pleaded that the reports were "intended to deceive the insurers." (Pl . Br. at 15).  That assertion is not supported by the actual amended complaint, however, which in fact does not plead either that defendants intended to deceive any insurers or that any insurers were in fact "deceived." Nowhere does the complaint even use the word "deceive" with respect to the insurers. All that is alleged is that the peer review and IME reports were delivered to the insurer and the insurers used the reports as a basis for denial of payment to plaintiff.  <u>See</u>, <u>e.g.</u>, Amended Complaint ¶¶ 145-46, 159-60, 205-06.

[7] In its brief, Sky Medical's counsel baldly asserts that Sky Medical purportedly conducts no diagnosis of its customers' injuries. Why this should even matter is left unexplained. Also left unexplained is how plaintiff's counsel can justify the inclusion of such an assertion in plaintiff's brief, as it is entirely unsupported by any citation to anything in the amended complaint itself, or how it conceivably squares with counsel's contrary assertion in plaintiff's opposition to the GW Defendants' motion that, supposedly, "all the services provided were medically necessary." (Pl. Opp. to GW Defendants' Motion at 17).

Equally misleading is the false suggestion that the IME reports at issue in <u>McGee I</u> only cut off reimbursement for future treatment, not reimbursement for services already rendered, thus assertedly rendering the situation in <u>McGee I</u> somehow different from that here.  The <u>McGee I</u> decision, however, makes crystal clear that, exactly as here, what was at issue, and what plaintiff was seeking, was reimbursement for services already rendered at the time the supposedly false reports were issued.  See <u>McGee I</u>, 2009 WL 2132439 at *1-2.

It additionally should be noted that, yet again, Sky Medical invokes as supposed support for its position a case that in truth undermines it.  In <u>Lundy v. Catholic Health System of Long Island, Inc.</u>, 711 F.3d 106, 119 (2d Cir. 2013), the Second Circuit affirmed the <u>dismissal</u> of the RICO claims that the plaintiffs had attempted to press.

F.   The RICO Claims Are Largely, If Not Entirely, Time-Barred

Plaintiff admits -- as it has no choice but to -- that the four-year RICO statute of

limitations must be measured from the time when plaintiff's injury was, or reasonably

should have been, discovered, not from when plaintiff uncovered the supposed

"conspiracy." (Pl. Br. at 10).  Rotella v. Wood, 528 U.S. 549, 120 S. Ct. 1075 (2000);

Koch v. Christie's International, PLC, 699 F.3d 141 (2d Cir. 2012); McLaughlin v.

America Tobacco Co., 522 F.3d 215, 233 (2d Cir. 2008).

Moreover, as pointed out in the Nationwide Defendant's opening brief, the

amended complaint itself expressly admits that "[t]he [alleged] injuries underlying this

complaint occurred when denial of claims forms were issued to Plaintiff."  (Amended

Complaint ¶ 294; emphasis added).  Thus, plaintiff became aware of its alleged injuries

upon receipt of those denial forms, when it was told by the insurers that it was not going

to be paid for equipment that it had supplied and that the equipment, which plaintiff had

supposedly believed was medically necessary, was not in fact necessary.  Under the law,

the statute of limitations clock began to run at that point.  That clock has now expired as

to the vast majority of the insurance claims that underlie plaintiff's suit.

Plaintiff's statement that "not even Defendants maintain that the limitations

period began to run with the denial of Sky's claims" is flat out false.  That is precisely

what the Nationwide Defendants maintain, because, that, as shown, is the law:  That is

when plaintiff discovered that it had been injured by non-payment by insurers for what

plaintiff contends was properly provided equipment.  It is further entirely irrelevant that it

allegedly was not until later that plaintiff discovered the supposed "corrupt organization

and fraudulent conduct" (Amended Complaint ¶ 57), or that the "fraud" was supposedly

"concealed."  Plaintiff knew from the outset that it had not been paid, and therefore had

been injured.  Further, plaintiff knew not only that it had not been paid for merely one or

two patients, but, at a minimum, <u>over 150</u> patients.  (<u>See</u> Amended Complaint, Exhibits

1, 6).  If this did not constitute the "storm warning" to which the <u>Koch</u> court referred,

<u>Koch</u>, 699 F.3d  at 151, it is difficult to envision what would.   To quote, as we did in our

moving brief, the United States Supreme Court:  "[W]e have been at pains to explain that

discovery of the injury, not discovery of the other elements of a claim, is what starts the

clock."  <u>Rotella</u>, 528 U.S. at 555, 120 S. Ct. at 1081.[8]

POINT II

PLAINTIFF IMPLICITLY CONCEDES THAT, UPON DISMISSAL OF THE<br>RICO CLAIMS, THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL<br><u>JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS</u>

Plaintiff does not contest that, upon dismissal of the RICO claims, the Court

should not exercise supplemental jurisdiction over what will then be an entirely state law-

based lawsuit that lacks any independent basic for federal jurisdiction.  It is therefore

undisputed that, upon the dismissal of the RICO claims, the balance of Sky Medical's

complaint should be dismissed as well.

---

[8]  Plaintiff makes the cursory suggestion (Pl. Br. at 13) that the Court consider giving plaintiff leave to file yet another amended complaint, adding further allegations purportedly pertinent to the statute of limitations bar.  This informal request for leave to amend is improper and should be disregarded.  <u>E.g.</u>, <u>Malin v. XL Capital, Ltd.</u>, 312 F. App'x 400, 402-03 (2d Cir. 2009) (cursory request in brief opposing motion to dismiss for leave to amend is not adequate; a proper request to amend includes a motion for leave to amend and the proffer of an amended pleading).  In any event, such an amendment would be futile, as the dates of the denial of the time-barred insurance claims are already known and set forth in Exhibits 1 and 6 to the amended complaint.

POINT III

THE DECLARATORY JUDGMENT THAT PLAINTIFF
SEEKS IS INAPPROPRIATE, FOR MULTIPLE REASONS

Plaintiff likewise does not, and cannot, contest that, the Declaratory Judgment Act does not itself confer federal court jurisdiction and that the only source of federal court jurisdiction here are plaintiff's RICO claims.  As plaintiff's RICO claims are not sustainable as a matter of law, no subject matter jurisdiction therefore exists.

As for the lack of any "actual controversy", plaintiff cannot escape that (i) with respect to any insurance claims as to which Sky Medical has failed to date to commence state proceedings in accordance with New York State's no-fault scheme, such claims are unripe; (ii) with respect to any insurance claims as to which state  proceedings are currently pending, such claims are unripe; (iii) with respect to any insurance claims as to which it has been determined in state proceedings that the denial of that claim was unwarranted, the insurer is required by New York law to pay that claim, thereby mooting any hypothetical damages that Sky Medical might otherwise have contended that it might suffer; and (iv) with respect to any insurance claim as to which it has been determined in state proceedings that the denial of the claim was indeed proper, Sky Medical likewise will not have suffered any harm.  In sum, under any scenario, there is no "actual controversy" for this Court to resolve; rather, all issues can be, will be, or have been adjudicated in a state forum.

This case thus fails to satisfy either of the two forms of ripeness that the Second Circuit discusses in Simmonds v. Immigration and Naturalization Service, 326 F.3d 351 (2d Cir. 2003).  "Constitutional ripeness":

prevents courts from declaring the meaning of the law in

> a vacuum and from constructing generalized legal rules
> unless the resolution of an actual dispute requires it.

326 F.2d at 357.  That is precisely what plaintiff is improperly asking this Court to do here:  To make a decision that is not in any way required to resolve the issues at hand, issues that are properly to be resolved in the state forum.

"Prudential ripeness" is:

> a tool that courts may use to enhance the accuracy of
> their decisions and to <u>avoid becoming embroiled in</u>
> <u>adjudications that may later turn out to be unnecessary or</u>
> <u>may require premature examination</u> of. . . issues that time
> may make easier. . . .

Id. (emphasis added).  In determining whether a case is "prudentially ripe", two factors are central: "(1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld."  Id. at 359 (citing Abbott Laboratories v. Gardner, 387 U.S. 148-49, 87 S. Ct. 1507, 1515 (1967)).

The instant case satisfies neither of these factors.  The issue presented, of whether the specific medical services that underlie plaintiff's individual insurance claims were or were not medically necessary and otherwise compensable under New York's comprehensive statutory and regulatory no-fault scheme, is not fit for judicial decision by this Court; rather, it is a matter to be resolved in the state forum mandated by New York State law.  Moreover, "the issues sought to be adjudicated [in this court] are contingent on future events or may never occur."  Isaacs v. Bowen, 865 F.2d 468, 478 (2d Cir. 1989).  Likewise, plaintiff will not suffer any "hardship", as all that it is required to do is abide by the process that state law establishes, and seek to enforce its rights and remedies in the manner that such state law provides.

POINT IV

PLAINTIFF'S COMMON-LAW FRAUD CLAIM CANNOT
SURVIVE AS A MATTER OF LAW, FOR MULTIPLE REASONS

Plaintiff cannot evade any of the multiple legally fatal deficiencies in the common-law fraud claim that plaintiff attempts to press against the Nationwide Defendants.  Indeed, in its brief (Pl. Br. at 19), plaintiff itself highlights requisite elements of a fraud claim that plaintiff fails to meet, quoting the New York Court of Appeals' reassertion of the well-settled principle that, in order for one to state a claim based upon allegedly fraudulent representations, a plaintiff must:

> show that the defendant knowingly uttered a falsehood intending to deprive the plaintiff of a benefit *and that the plaintiff was thereby deceived* and damaged.

Amalfitano v. Rosenberg, 12 N.Y.3d 8, 11, 903 N.E.2d 265, 267, 874 N.Y.S.2d 868, 870 (2009) (quoting Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 4 N.Y.2d 403, 406-07, 151 N.E.2d 833, 176 N.Y.S.2d 259 (1958); emphasis in original).

As shown in Point IV of our moving papers, and in Points I(A) and (B) above, plaintiff's pleading falls far short of these requirements.  For one, to start with the requirement that the Court of Appeals itself emphasized in Amalfitano, plaintiff was not deceived by any statement made by any of the defendants, no less by the Nationwide Defendants.  The amended complaint does not allege that plaintiff was deceived by any such statement.  Nor could it as a matter of logic, for, as discussed, the peer reviews and IME reports that contained the allegedly fraudulent statements were not even made until

after plaintiff had already supplied medical equipment to the individual whose medical condition and medical care was the subject of those reviews and reports.[9]

Put slightly differently, and to use other language commonly used to set forth the elements of a claim of fraud, plaintiff thus does not allege, and could not coherently have alleged, that plaintiff relied (no less reasonably relied) upon any statement by any defendant in supplying any medical equipment or undertaking any other actions. See, e.g., Premium Mortgage Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) (setting forth elements of fraud claim, including reliance); State Farm Mutual Automobile Insurance Co. v. Grafman, 655 F. Supp. 2d 212, 220 (E.D.N.Y. 2009) (same).

The complaint likewise fails to allege that any statement by any of the Nationwide Defendants,  or for that matter any of the other defendants, was made for the purpose of deceiving Sky Medical, inducing Sky Medical to rely on such statement, or depriving Sky Medical of anything.

As also previously discussed, neither the amended complaint, the RICO Case Statement, nor any of the exhibits to the complaint identify any statement, either false or true, that any of the Nationwide Defendants ever made to Sky Medical.  Indeed, as also previously emphasized, neither the complaint, the RICO Case Statement, nor the exhibits set forth any purported false statement made by any of the Nationwide Defendants.

As for damages, any injury that Sky Medical supposedly suffered was the proximate result of insurers' denial of plaintiff's claims, not by anything that the complaint alleges that any of the Nationwide Defendants did or said.

---

[9]   In fact, the amended complaint does not allege that plaintiff even received any of the purportedly false statements upon which this case is grounded.  While in plaintiff's brief, plaintiff's counsel states that Paragraphs 122 through 129 of the amended complaint allege plaintiff's receipt of the statements, those paragraphs say no such thing.

Plaintiff's effort to distinguish the identical fraud claims that the Court previously rejected in <u>McGee v. Allstate</u>, 2011 WL 3497527 (E.D.N.Y. 2011) ("<u>McGee Allstate</u>"), does not withstand analysis. Plaintiff tries to differentiate the level of detail in the allegations in the two cases by pointing to Exhibits 1 and 6 to the amended complaint, stating "Exhibits 1 and 6 specifically identify Defendants' false statements, who said them, and when and where they were said, and why they were false." (Pl. Br. at 20). As the risk of repetition, we must again emphasize that, contrary to the claim of supposed "specificity" that Exhibits 1 and 6 purportedly add to plaintiff's pleading, <u>nowhere</u> in Exhibit 1 or Exhibit 6 is there a single reference to any of the Nationwide Defendants. Thus, at least insofar as the claims against the Nationwide Defendants are concerned, the lack of particularly that was one of the grounds for this Court's dismissal of <u>McGee Allstate</u> equally dooms plaintiff's fraud claim here.

Additionally, plaintiff does not even try to attempt to address the other ground for this Court's dismissal of <u>McGee Allstate</u>. In words equally applicable here, the Court held, 2011 WL 3497527 at *3, that plaintiff had:

> fail[ed] to adequately make out a fraud claim under New York law. . . . [H]is complaint is woefully deficient. . . . McGee, simply, fails to plead any facts showing that [the defendant] made representations to him or to [insureds] that were false and relied upon.

POINT V

PLAINTIFF'S "UNJUST ENRICHMENT" CLAIM FAILS
<u>AS A MATTER OF LAW, FOR MULTIPLE REASONS</u>

Plaintiff's attempt to salvage its unjust enrichment claim falls completely flat. First, Sky Medical is simply wrong in its contention that only where a quantum meruit-based theory of unjust enrichment has been pled is there a requirement that the

16

performance have been rendered for the defendant.  The opinion in George Malone & Co., Inc. v. Rieder, 19 N.Y.3d 511, 973 N.E.2d 743, 950 N.Y.S.2d 333 (2012), that espoused such a view was the dissent, and in a footnote no less.  19 N.Y.3d at 522 n.2, 973 N.E.2d at 750 n.2, 950 N.Y.S.2d at 333 n.2.  The majority decision, in affirming the dismissal of an unjust enrichment claim, pointedly ignored the dissent's suggestion, as well as the suggestion that the rule espoused in Kagan v. K-Tel Entertainment, Inc., 172 A.D.2d 375, 568 N.Y.S.2d 756 (1st Dept. 1991) (cited in our opening brief, together with other cases; see Def. Br. at 19), should somehow be limited or otherwise disturbed.  The standard for an unjust enrichment claim thus remains as discussed in our moving papers, as demonstrated in numerous decisions, including Chief Judge Amon's decision in Vertex Const. Corp. v. T.F.J. Fitness L.L.C., 2011 WL 5884209 (E.D.N.Y. 2011).[10]

Second, the New York Court of Appeals has left no doubt that, while a plaintiff need not allege privity between the parties to state an unjust enrichment claim, "it had to assert a connection between the parties that was not too attenuated."  George Malone & Co., 19 N.Y.3d at 517, 973 N.E.2d at 747, 950 N.Y.S.2d at 337 (citing Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182, 944 N.E.2d 1104, 919 N.Y.S.2d 465 (2011), and Sperry v. Crompton Corp., 8 N.Y.3d 204, 863 N.E.2d 1012, 831 N.Y.S.2d 760 2007)).  The George Malone court then held, as the Court of Appeals had previously held in both Mandarin and Sperry, that where there were no dealings between the parties, the relationship was "too attenuated" and an unjust enrichment claim could not survive a motion to dismiss.  19 N.Y.3d at 518, 973 N.E.2d at 747, 950 N.Y.S.2d at 337.  Here,

---

[10] In any event, Sky Medical's claim is a quantum meruit-based claim: Sky Medical is seeking payment for the value of medical materials that it provided.  See, e.g., Lombard v. Economic Development Administration of Puerto Rico, 1998 WL 273093 (S.D.N.Y. 1998) (plaintiff may seek payment for both services and materials under quantum meruit theory, provided they were not covered by contracts).

too, the unjust enrichment cannot stand, as Sky Medical had no dealings at all with any of the Nationwide Defendants.

Third, plaintiff has no response to the fact that, even accepting the complaint's allegations as true, it was only the insurance carriers who paid monies to any of the defendants, not plaintiff; that such payment was not linked to how much the insurers did or did not pay to plaintiff on its insurance claims; and no payments by any insurer were even made to any of the Nationwide Defendants. Thus, any link between monies that plaintiff was not paid and any monies received by any of the Nationwide Defendants is itself tremendously attenuated, if even connected in any way at all. (See Amended Complaint ¶¶ 12, 72-74, 283, 285).

Fourth, plaintiff tries to make a nonsensical distinction between "the subject matter of a lawsuit and the subject matter of a claim." (Pl. Br. at 21). What this means is beyond comprehension. The subject matter of plaintiff's claim of unjust enrichment is the same as the subject matter of each of its other claims in this lawsuit, i.e., plaintiff's assertion that it is entitled to payment for medical supplies it provided to insurance companies' insureds, and defendants' supposed wrongdoing that, plaintiff asserts (both in this suit and in proceedings in state court), somehow prevented plaintiff from obtaining such payment from insurance carriers.

Fifth, it matters not for purposes of the unsustainable unjust enrichment claim that there was no direct contract between plaintiff and defendants. What matters, and precludes the assertion of a quasi-contractual unjust enrichment claim, is that the gravamen of this suit is actual contractual relationships, both between the individuals to whom Sky Medical provided health care services and those individuals' insurance

carriers, and the carriers' contracts with defendant SCS.  See Vertex Const. Corp., 2011 WL 5884209 at *4 (unjust enrichment claim barred against third-party non-signatories to contract as well as actual signatories); Network Enters. Inc. v. Reality Racing, Inc., 2010 WL 3529237, *7 (S.D.N.Y. 2010) (existence of contract governing subject matter at issue precludes claim for unjust enrichment even against third-party non-signatory to contract).

POINT VI

PLAINTIFF'S THIRTEENTH CAUSE OF ACTION FAILS<br>AS A MATTER OF LAW, FOR MULTIPLE REASONS

Plaintiff's effort to justify its untenable tortious interference with contract claim entirely misses the point.  Plaintiff dedicates several pages to discussing how the foundation for its claim to reimbursement from insurers is largely contractual in nature. The contractual underpinning for this suit is not only not in dispute but, as shown above, undermines several of plaintiff's claims, including its RICO and unjust enrichment claims.  But the mere existence of a contractual relationship, needless to say, does not mean that any such contract has been breached.  And, as demonstrated in our moving papers, an insurer's denial of a claim does not constitute a "breach" of its contractual obligations, but merely gives the party whose claim has been denied the right to challenge that denial through proceedings in state court pursuant to New York's regulatory no-fault scheme.  (See Def. Br. at 21 and statute, regulation, and cases cited).

Furthermore, contrary to plaintiff's distortion of the Nationwide Defendants' position, the Nationwide Defendants are not saying that plaintiff cannot seek to pursue contract-based claims against insurers whom Sky Medical believes owe plaintiff money for medical equipment supplied to those insurers' insureds.  Rather, all that the amended complaint alleges is that the insurers have denied certain claims submitted by defendants.

19

Again, under the settled law, including the Court of Appeals' decision in <u>Sukup v. State</u>,

19 N.Y.2d 519, 521, 227 N.E.2d 842, 843, 281 N.Y.S.2d 28, 30 (1967), and the Appellate

Division's decision in <u>Romanello v. Intesa Sanpaolo, S.p.A.</u>, 97 A.D.3d 449, 949

N.Y.S.2d 345 (1st Dept. 2012), dismissing a tortious interference with contract claim,

such denial does not in and of itself constitute a "breach." Absent breach, a tortious

interference claim cannot stand. <u>E.g.</u>, <u>Conte v. County of Nassau</u>, 2013 WL 3878738,

*19 (E.D.N.Y. 2013); <u>IMR Associates, Inc. v. C.E. Cabinets, Ltd.</u>, 2007 WL 1395547, *7

(E.D.N.Y. 2007).[11]

Plaintiff also cannot evade the reality that defendants' alleged actions were

undertaken on behalf and as direct or indirect agents of the insurance companies. As the

First Department held in <u>Automatic Findings, Inc. v. Miller</u>, 232 A.D.2d 245, 648

N.Y.S.2d 90 (1st Dept. 1996), persons utilized by an insurer to investigate a claim for

coverage are agents of the insurer and therefore cannot be held liable for alleged tortious

interference in a suit seeking damages as result of insurer's decision to deny the claim.

Here, likewise, all work undertaken by the defendants was done in connection with the

claims submitted by insurance companies' insureds (or their assignees). Furthermore,

there is no allegation in the complaint that any of the Nationwide Defendants received

---

[11] The cases that plaintiff cites are entirely irrelevant. Each of them concerned which statute of limitations should apply to cases challenging denial of insurance benefits by insurers, a matter that has no pertinence to this suit, in which no insurer is even a party. <u>See Mandarino v. Travelers Property Casualty Insurance Co.</u>, 37 A.D.3d 775, 831 N.Y.S.2d 452 (2d Dept. 2007); <u>Benson v. Boston Old Colony Insurance Co.</u>, 134 A.D.2d 214, 521 N.Y.S.2d 14 (1st Dept. 1987); <u>Chester Med. Diagnostic, P.C. v. Kemper Cas. Ins.</u>, 21 Misc. 3d 1108(A), 873 N.Y.S.2d 232 (N.Y.C. Civ. Ct. 2008).

Incidentally, it is not the Nationwide Defendants, but Sky Medical, that has misquoted the governing case law. It was none other than the New York Court of Appeals that definitely held that "It is not a breach of contract per se for a carrier to deny that its policy covers a particular event." <u>Sukup</u>, 19 N.Y.2d at 521, 227 N.E.2d at 843, 281 N.Y.S.2d at 30. It is plaintiff, not the Nationwide Defendants, that has incorrectly attributed this statement to the <u>Romanello</u> court.

any greater compensation for concluding that services or materials provided were not medically necessary; thus, there is not even any support in the complaint for plaintiff's implication that such findings somehow improperly promoted the "self-interest" of any of the Nationwide Defendants.

In unconvincingly seeking to justify its legally non-viable tortious interference claim, plaintiff fails even to try to counter the Nationwide Defendants' demonstration of the lack of any damages, an additional essential element of any tortious interference claim.  (See Def. Br. at 21).  Moreover, plaintiff cannot counter the Nationwide Defendants' showing that the vast majority of the insurance claims that underlie plaintiff's suit pre-date the three-year statute of limitations that governs tortious interference claims.

POINT VII

THE COMPLAINT DOES NOT ASSERT -- AND AS A<br>MATTER OF LAW CANNOT VALIDLY ASSERT -- THAT<br>PATIENT FOCUS'S CORPORATE VEIL SHOULD BE PIERCED

Now, over a full year after filing suit, and after already having filed an amended complaint, plaintiff appears finally to recognize that calling a defendant the supposed "true owner" of a corporation hardly suffices to subject that purported "owner" to personal liability for the corporation's acts.  Plaintiff thus desperately tries to evade this additional deficiency in Sky Medical's claims against the Nationwide Defendants by now, for the first time, saying that it would like to "pierce the corporate veil" of defendant Patient Focus.

Nowhere in the amended complaint, however, is there any assertion that Patient Focus's corporate veil should be pierced.  Nor are any facts alleged on which such piercing of the corporate veil could conceivably be legitimately grounded.

As this Court recognized in <u>Panam Management Group, Inc. v. Pena</u>, 2011 WL 3423338 (E.D.N.Y. 2011), in granting the defendants' motion to dismiss, under New York law a plaintiff cannot pierce the corporate veil except where:

> (1) the owners exercised complete domination of the corporation with respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury. *Morris v. N.Y. State Dep't of Taxation and Fin.*, 623 N.E.2d 1157, 1160-61 (N.Y. 1993).

<u>Id</u>. at *6.  As this Court further held, factors to be considered in assessing the necessary "complete domination" include those that the Second Circuit laid out in <u>Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.</u>, 933 F.2d 131, 139 (2d Cir. 1991).

Consideration of each of those factors readily reveals Sky Medical's complete failure to satisfy them in its pleading here:

1. "the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like." Sky Medical's amended complaint contains <u>no</u> such allegations.

2. "inadequate capitalization." Sky Medical's amended complaint contains <u>no</u> such allegation.

3. "whether funds are put in and taken out of the corporation for personal rather than corporate purposes." Sky Medical's amended complaint contains <u>no</u> specific allegations concerning this topic.

4. "overlap in ownership, officers, directors, and personnel." While Sky Medical alleges that the Nationwide Defendants are supposedly the "true owners" of Patient Focus, Sky Medical's amended complaint contains <u>no</u> allegations concerning any overlap in officers, directors, or personnel.

22

5. "common office space, address and telephone numbers of corporate entities." Sky Medical's amended complaint contains <u>no</u> such allegation.

6. "the amount of business discretion displayed by the allegedly dominated corporation." Sky Medical's amended complaint contains <u>no</u> allegations concerning this topic.

7. "whether the related corporations deal with the dominated corporation at arms length." Sky Medical's amended complaint contains <u>no</u> allegations concerning this topic.

8. "whether the corporations are treated as independent profit centers." Sky Medical's amended complaint contains <u>no</u> allegations concerning this topic.

9. "the payment or guarantee of debts of the dominated corporation by other corporations in the group." Sky Medical's amended complaint makes <u>no</u> such allegation.

10. "whether the corporation in question had property that was used by other of the corporations as if it were its own." Sky Medical's amended complaint makes <u>no</u> such allegation.

Therefore, just as this Court ruled in <u>Panam Management Group</u>, "Plaintiff cannot satisfy these requirements based upon plaintiff's allegations in the. . . Amended Complaint." 2011 WL 3423338 at *7.

POINT VIII

GIVEN PLAINTIFF'S ADMISSION AND THE ACTUAL
ALLEGATIONS OF THE COMPLAINT, NO CLAIM
<u>CAN BE ASSERTED AGAINST ALEX VAYNER</u>

In its brief, Sky Medical again admits, as it has to, that the amended complaint's sole allegation against Alex Vayner is that he "was the owner of a management company [BAB] through which he exercised his control over Patient Focus." (Pl. Br. at 28; <u>see also</u> Amended Complaint ¶¶ 15, 25, 80; RICO Case Statement ¶ 2(10)). Sky Medical further again admits that Vayner is no longer an owner of BAB, having sold his interest

23

in the company well prior to the limitations period that governs this suit.  (Pl. Br. at 29; see also Douglas Aff't, Exhibit C).

Despite these repeated admissions, Sky Medical attempts in its brief to justify plaintiff's continued assertion of claims against Vayner upon plaintiff's counsel's speculation that perhaps since the sale of his interest in BAB Vayner might have conceivably had separate involvement with Patient Focus.  There is, however, no such allegation in the amended complaint.  Rather, at the risk of repetition, the amended complaint's only allegation against Vayner is that, as an owner of BAB, Vayner supposedly used his ownership to control Patient Focus. (Amended Complaint ¶¶ 15, 25, 80).  Thus, given the actual limited allegations of the amended complaint and plaintiff's repeated admissions, no legally justifiable claim can be asserted against Vayner.

<u>CONCLUSION</u>

Accordingly, the Court should dismiss this action in its entirety as against each of the Nationwide Defendants.

Dated:  New York, New York
        February 10, 2014

                            GALLET DREYER & BERKEY, LLP

                            By: _____
                                David S. Douglas (DD-6250)

                            845 Third Avenue, 8th Floor
                            New York, New York 10022
                            (212) 935-3131

                            Attorneys for Defendants
                            Nationwide Management Inc.,
                            Benjamin Osiashvili, Mikael
                            Osiashvili, Svetlana Osiashvili,
                            and Alex Vayner

00486914.DOCX

24