

129 LIVINGSTON STREET
SECOND & THIRD FLOORS
BROOKLYN, NY 11201
T: (718) 438-1200 • F: (718) 438-8883
sbelinfanti@gtmdjd.com

01/25/2016

BY ECF
Honorable A. Kathleen Tomlinson
United States District Court
Eastern District of New York
Long Island Federal Courthouse
100 Federal Plaza
Central Islip, NY  11722

**Re:** *Sky Medical Supply Inc. v. SCS Support Claims Services, Inc., et al.*, **(12-CV-6383):**
**Plaintiff's Motion to Compel Production From 'GW Defendants'**

Dear Judge Tomlinson:

On behalf of Plaintiff Sky Medical Supply Inc. ("Plaintiff"), we submit the instant motion seeking an order compelling Defendants SCS Support Claim Services ("SCS"), Dante Brittis, M.D.; Joseph C. Cole, M.D.; Eitan Dagan; Mitchell Ehrlich, M.D.; Christopher Ferrante, D.C.; William S. Kritzberg, M.D.; Denis Mann, M.D.; Robert A Sohn, M.D.; Renat R. Sukhov, M.D.; Mark Weber, M.D.; Mitchell L. Weisman, M.D.; and Julio Westerband, M.D., (collectively, "GW Defendants") to provide complete and verified responses to Plaintiff's discovery demands and supplemental demands.

By way of history, Plaintiff filed the Second Amended Complaint for this action ("Complaint") on July 6, 2014.[1]  Throughout the entire life cycle of this matter, Plaintiff has alleged that GW Defendants and their co-Defendants have colluded to cause, on a preordained basis, the denial of insurance benefits claims brought by Plaintiff and other health providers against the insurance carriers that had issued the relevant policies.[2]  Specifically, the Complaint alleges: that Defendants collectively executed a protocol wherein services imparted by health providers would universally be deemed not medically necessary, regardless of the medical condition and history of each patient; that the number of peer review reports bearing Doctor Defendants' electronic signatures was so massive that they could not possibly have been the result of legitimate medical analysis; that the medical records allegedly reviewed were not the basis of the ultimate opinions contained within the peer reports; that the reports were not created by the doctors as affirmed to on the reports, but rather by

---

[1] Plaintiff's initial complaint had been previously dismissed without prejudice by Hon. Joseph F. Bianco.  Although the Court had found the preceding Complaint to be "well-pleaded", the dismissal was granted because Plaintiff had not specified which of Plaintiff's insurance claims, all of which had been the subject of unrelated State civil court actions against insurance companies, had been litigated to completion.  By the Court's reasoning, only those claims that had been litigated to completion, and for which Plaintiff had not been fully reimbursed for the amounts listed on the bills submitted to the carriers, were ripe for adjudication in federal court.  Thus pursuant to Judge Bianco's ruling, Plaintiff filed the instant Complaint on July 6, 2014, which had been amended to specify those claims that were fully litigated in the civil courts and that are the basis for Plaintiff's current damages.

[2] The Complaint states that the 177 claims (from *Exhibit 7* of the Complaint) that provide the calculus for Plaintiff's damages were unpaid as the result of a fraudulent enterprise that was formed to universally deny payment of insurance claims that had been submitted by Plaintiff and other similarly situated health providers to insurance carriers, who in turn forwarded them to Defendants for independent determinations as to the the medical necessity of the billed-for services.   Complaint ¶¶ 8-9, 79 – 85, 91-102, 129 and passim.

laypersons who generated them at the behest of SCS, Patient Focus Medical Examinations, PC ("Patient Focus") and the various Manager/Management Company Defendants; that the boilerplate "Discussion" sections of the reports are simply chosen by laypersons from a number of prefabricated paragraphs residing in Defendants' computer system, and which populate the reports depending on the services being reviewed; and that through their reports the Defendants deemed essentially all services to be medically unnecessary so that, in part, they could generate extra revenue via court and/or arbitration testimony that would be required to support the reports.[3]

With respect to Plaintiff's initial demands, it has not received a single document from any of the thirteen GW Defendants. Plaintiff now seeks the court's intervention. Below are a non-exhaustive sample of discovery demands that have not yet been complied with by Defendants:

*With Respect to Plaintiff's Initial Demands*

Document Demand No. 6: Document Demand No. 6 of Plaintiff's First Request for Production of Documents seeks: Any and all professional medical texts, reports, manuals, research studies, literature, guides, or other documents you relied upon when producing any report identified in Exhibits 1 and 7 to the Second Amended Complaint.

GW Defendants Responded: "Defendant objects to this request as vague, overbroad, susceptible to multiple interpretations, and irrelevant. Subject to these objections, and without waiving the foregoing General and Specific Objections, Defendant will produce any responsive non-privileged documents that are in his possession, custody, or control."

In their response, GW Defendants gave boilerplate objections, but stated that they would produce responsive non-privileged documents, which would include this literature.[4] They failed to do so. On January 7, 2016, Plaintiff's counsel contacted GW Defendants by email and inquired, "[a]re you planning on serving any actual documentation, on behalf of any of your clients, in response to our demand for document production? To date, we have received nothing." A follow-up email to this effect was sent by Plaintiff on January 12, 2016. GW Defendants responded that they would not produce anything that falls outside the 177 claims listed on the damages spreadsheet. Even in the context of the initial limited discovery order that had been issued by Your Honor while Judge Bianco's decision on the motions to dismiss was pending, Defendant must provide full copies of all literature cited in the 177 reports listed on the damages spreadsheet (Exhibit 7 of the Complaint), since the Complaint places such literature squarely into focus as a relevant aspect of the reports' creation.[5] There is no valid basis for refusing to provide this documentation.

---

[3] Thus the Complaint and incorporated exhibits illustrate that while Plaintiff's damages currently consist of 177 wrongly denied claims, they are simply a cog in a much larger machine created to deny, in a wholesale manner, claims for benefits by health providers including but not limited to Plaintiff.[3] However, this letter motion is limited to Plaintiff's initial set of discovery demands, since the time frame for GW Defendants to respond to Plaintiff's broader supplemental demands has not yet lapsed. Plaintiff reserves its right to engage in motion practice regarding the supplemental demands should insufficient responses be forthcoming.

[4] "[P]at, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure."Obiajulu v. City of Rochester, Dep't of Law, 166 F.R.D. 293, 295 (W.D.N.Y.1996). Indeed, "'boilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy,' while producing 'no documents . . . are a paradigm of discovery abuse.'" Pegoraro v. Marrero, 281 F.R.D. 122, 128 (S.D.N.Y. 2012) (citing Jacoby v. Hartford Life & Accident Ins. Co., 254 F.R.D. 477, 478 (S.D.N.Y.2009)).

[5] "In addition to the above issues, the peer review reports consistently cite to medical literature in support of the conclusions contained in the reports. However, such literature is continuously mischaracterized in an airbrushed attempt to make the reports' conclusions seem independent and legitimate; moreover, literature that Doctor Defendants knows to be outdated or irrelevant is nonetheless input by laypersons into reports bearing Defendant Doctors' signatures. This exact issue, involving the very same Doctor Defendants, has been recognized and discussed by triers of fact and law" Complaint ¶ 95.

> Document Demand No. 14: Document Demand No. 14 of Plaintiff's First Request for Production of Documents seeks:  Copies of any report identified m Exhibits 1 and 7 to theSecond Amended Complaint.
>
> GW Defendants Responded: "Defendant objects to this Demand as seeking the production of documents outside the narrow scope of discovery as mandated by Magistrate Judge Tomlinson, because it seeks a response related to Exhibit 1 to the Complaint, the contents of which are irrelevant to Plaintiff's damage claims. Subject to and without waiving this objection, or the foregoing General and Specific Objections, Defendant will produce any nonprivileged documents in his possession, custody, or control."

Again, GW Defendants agreed to produce nonprivileged documents in their possession, custody or control, but failed to do so.  None of the objections stated in their response are proper – indeed, the demand calls for copies of the very peer review reports that form the damages of this lawsuit.  Their relevance is unquestionable.  Furthermore, even if GW Defendants felt that the demand was broader than anticipated under the Court's initial limited discovery order while Judge Bianco's decision was pending, it was nonetheless required to produce copies of the reports for all 177 claims listed on the "Damages Spreadsheet".

> Interrogatory No. 5:  Plaintiff's 5th Interrogatory states:  Please state whether you have ever used a signature stamp or electronic signature to sign any report identified in Exhibits 1 and 7 to the Second Amended Complaint and identify any and all persons who were authorized to use such stamp or electronic signature on your behalf.
>
> GW Defendants responded:  "Defendant objects to the Interrogatory insofar as it seeks information beyond the narrow scope of the parameters for discovery set by Magistrate Judge Tomlinson during the Court conference on August 7, 2014 because it seeks a response related to Exhibit 1 to the Complaint, the contents of which are irrelevant to Plaintiff's damage claims. Defendant further objects to all other parts of the Interrogatory as overbroad, overburdensome, and irrelevant to the damage calculation in the Complaint."

The objections are improper.[6]  Plaintiff's Complaint alleges numerous times that the signatures on the peer reports at issue were placed on the reports by laypersons as opposed to Doctor Defendants. Consequently, GW Defendants' objections are baseless.

The Plaintiff therefore respectfully requests that the Court direct that GW Defendants produce all documents in their possession, custody, or control that are responsive to Document Demand No. 6 and Document Demand No. 14, including but not limited to all peer review reports, literature cited therein (full and complete copies) and signature stamps with respect to the 177 claims listed on the peer reports; furthermore, Plaintiff requests that GW Defendants be compelled to provide responses to the above-mentioned interrogatory.

Thank you for your consideration of this letter.

---

[6] Courts in the Second Circuit have long held that "[a] party wishing to object to an interrogatory may not merely repeat the 'familiar litany that the interrogatories are burdensome, oppressive or overly broad,' but rather must 'specifically' show how the interrogatory 'is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'" Convermat Corp. v. St. Paul Fire and Marine Ins. Co., CV 06-1045 JFB AKT, 2007 WL 2743696, at *2 (E.D.N.Y. Sept. 18, 2007) (citing Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y.1984))

Respectfully,

/s/ Stefan Belinfanti

Stefan Belinfanti, Esq.  
*Counsel for Plaintiff*  
Gary Tsirelman P.C.  
129 Livingston, 2nd Floor  
Brooklyn NY 11201

Cc: All Counsel via ECF  
    Warren Cohen via ECF  
      and email