**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

SKY MEDICAL SUPPLY INC.,

                Plaintiff,

        -against-

SCS SUPPORT CLAIM SERVICES, INC.,
PATIENT FOCUS MEDICAL EXAMINATIONS,
PC d/b/a ALL BOROUGH MEDICAL, PC,
NATIONWIDE MANAGEMENT INC., BAB
MANAGEMENT INC., MANAGEMENT
COMPANY A, MANA
GEMENT COMPANY B, MANAGEMENT
COMPANY C, MANAGEMENT COMPANY D,
MANAGEMENT COMPANY E, BENJAMIN
OSIASHVILI a.k.a VENIAMIN OSIASHVILI,
MIKAEL OSIASHVILI a.k.a MICHAEL
OSIASHVILI, SVETLANA OSIASHVILI,
ALEKSEY VAYNER a.k.a ALEX VAYNER,
EITAN DAGAN, MANAGER DEFENDANT A,
MANAGER DEFENDANT B, MANAGER
DEFENDANT C, MANAGER DEFENDANT D,
MANAGER DEFENDANT E, TATIANA
SHARAHY, MD, MITCHELL EHRLICH, MD,
JOSEPH C. COLE, MD, JULIO WESTERBAND,
MD, WILLIAM A. ROSS, MD, RENAT R.
SUKHOV, MD, WILLIAM S. KRITZBERG, MD,
ROBERT A. SOHN, DC, STANLEY ROSS, MD,
MITCHELL L. WEISMAN, MD, MARK WEBER,
MD, GARY J. FLORIO, MD, ANTONIO
MARTINS, MD, DAMION A. MARTINS, MD,
M.S., DANTE BRITTIS, MD, CHRISTOPHER
FERRANTE, DC, BRIAN FREINDLICH, DC,
WAYNE KERNESS, MD, DENIS MANN, DC,
ANDREW MILLER, MD, ANDREW BAZOS, MD,
DREW STEIN, MD, LINDA ACKERMAN and
EVGENIYA VAKIDOVA,

                Defendants.

-----------------------------------------------------------------X

**MEMORANDUM &
ORDER**

CV 12-6383 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.     PRELIMINARY STATEMENT

Plaintiff Sky Medical Supply Inc. ("Plaintiff" or "Sky Medical") brings the instant action against SCS Support Claim Services, Inc., Patient Focus Medical Examinations, PC d/b/a All Borough Medical, PC, Nationwide Management Inc., BAB Management Inc., Management Company A, Management Company B, Management Company C, Management Company D, Management Company E, Benjamin Osiashvili a.k.a Veniamin Osiashvili, Mikael Osiashvili a.k.a Michael Osiashvili, Svetlana Osiashvili, Aleksey Vayner a.k.a Alex Vayner, Eitan Dagan, Manager Defendant A, Manager Defendant B, Manager Defendant C, Manager Defendant D, Manager Defendant E, Tatiana Sharahy, MD, Mitchell Ehrlich, MD, Joseph C. Cole, MD, Julio Westerband, MD, William A. Ross, MD, Renat R. Sukhov, MD, William S. Kritzberg, MD, Robert A. Sohn, DC, Stanley Ross, MD, Mitchell L. Weisman, MD, Mark Weber, MD, Gary J. Florio, MD, Antonio Martins, MD, Damion A. Martins, MD, M.S., Dante Brittis, MD, Christopher Ferrante, DC, Brian Freindlich, DC, Wayne Kerness, MD, Denis Mann, DC, Andrew Miller, MD, Andrew Bazos, MD, Drew Stein, MD, Linda Ackerman and Evgeniya Vakidova (collectively, the "Defendants").  Plaintiff seeks monetary damages based upon the following causes of action:  (1) declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that all peer reviews and all IME reports issued by the Defendants are null and void; (2) mail fraud under the Federal Racketeering Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §1962(c); (3) mail fraud under the RICO Act, 18 U.S.C. §1962 (d) against the Nationwide Defendants; (4) mail fraud under the RICO Act, 18 U.S.C. §1962 (c) against the GW Defendants; (5) mail fraud under the RICO Act, 18 U.S.C. §1962 (c) against the GW Defendants; (6) mail fraud under the RICO Act, 18 U.S.C. §1962 (d) against the Nationwide

Defendants; (7) mail fraud under the RICO Act, 18 U.S.C. §1962 (d) against the Nationwide

Defendants; (8) mail fraud under the RICO Act, 18 U.S.C. §1962 (d) against the GW

Defendants; (9) mail fraud under the RICO Act, 18 U.S.C. §1962 (d) against the GW

Defendants; (10) common law fraud;     (11) aiding and abetting fraud against the GW

Defendants; (12) unjust enrichment; and (13) tortious interference. *See generally* Second

Amended Complaint ("SAC") [DE 294].

Presently before the Court are multiple discovery motions filed by both parties.

Specifically, these include: (1) the GW Defendants'[1] motion to compel Plaintiff to produce

documents consistent with the requirements of Rule 34 [DE 428]; (2) the Nationwide

Defendants'[2] motion to compel Plaintiff to produce documents responsive to specific document

requests [DE 432]; (3) Plaintiff's motion to compel the GW Defendants to provide complete

responses to specific interrogatories and document requests [DE 433]; and (4) Plaintiff's motion

to compel the Nationwide Defendants to provide complete responses to specific interrogatories

and document requests [DE 434].

## II.    APPLICABLE LEGAL STANDARDS

### A.  *Rule 26*

Rule 26(b)(1), as amended on December 1, 2015, recognizes that "[i]nformation is

discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs

of the case." Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley v. Choice*

---

[1]     The GW Defendants consist of SCS Support Claim Services, Dante Brittis, M.D., Joseph C. Cole, M.D., Eitan Dagan, Mitchell Erlich, M.D., Christopher Ferrante, D.C., William J. Krtizberg, M.D., Denis Mann, M.D., Robert A. Sohn, M.D., Renat R. Sukhov, M.D., Mark Weber, M.D., Mitchell L. Weisman, M.D. and Julio Westerband, M.D. *See* DE 428.

[2]     The Nationwide Defendants consist of Nationwide Management Inc., Benjamin Osiashvili, Mikael Osiashvili, Svetlana Osiashvili and Alex Vayner. *See* DE 432.

*Hotels Int'l*, No. CV 14-634, 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015) (recognizing that "the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant 'to any party's claim or defense,' also 'proportional to the needs of the case.'") (internal citation omitted); *Denim Habit, LLC v. NJC Boston, LLC*, No. 13 CV 6084, 2016 WL 2992124, at *3 (E.D.N.Y. May 23, 2016).  Notably, although Rule 26 still permits a wide range of discovery based upon relevance and proportionality, the "provision authorizing the court . . . to order discovery of any matter relevant to the subject matter involved in the action" has been eliminated.  Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley*, 2015 WL 9413101, at *2 (internal citation omitted).  The rationale behind the elimination of this phrase is the reality that it "has been used by some, incorrectly, to define the scope of discovery."  Rule 26 Advisory Committee Notes to 2015 Amendments.  Thus, Rule 26(b)(1), as amended, although not fundamentally different in scope from the previous version "constitute[s] a reemphasis on the importance of proportionality in discovery but not a substantive change in the law."  *Vaigasi v. Solow Mgmt. Corp.*, No. 11 CIV 5088, 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016); *see Robertson v. People Magazine*, No. 14 Civ. 6759, 2015 WL 9077111 at *2 (S.D.N.Y. Dec. 16, 2015) ("[T]he 2015 amendment [to Rule 26] does not create a new standard; rather it serves to exhort judges to exercise their preexisting control over discovery more exact-ingly.").

Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (citing *Wells Fargo Bank, N.A. v. Konover,* No. 05 Civ. 1924, 2009 WL 585430, at *5 (D. Conn. Mar. 4, 2009)); *Evans v. Calise,* No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y.

May 12, 1994)); *Denim Habit, LLC*, 2016 WL 2992124, at *3. In general, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2008)); *Barbara*, 2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery disputes."); *Coggins v. Cnty. of Nassau*, No. 07 Civ. 3624, 2014 WL 495646, at *2 (E.D.N.Y. Feb. 6, 2014) (A district court has "broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be privileged or confidential.") (internal quotation omitted); *see also Mirra v. Jordan*, No. 13-CV-5519, 2016 WL 889683, at *2 (S.D.N.Y. Feb. 23, 2016) ("[m]otions to compel are left to the court's sound discretion."); *Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-867, 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) ("[A] motion to compel is entrusted to the sound discretion of the district court.").

## B. *Rule 34*

Rule 34(a) of the Federal Rules of Civil Procedure delineates the type of items that a requesting party may "inspect, copy, test or sample" when such items are in the "responding party's possession, custody, or control[.]" Fed. R. Civ. P. 34(a). The overall scope of Rule 34 is broad and includes "information that is fixed in a tangible form and to information that is stored in a medium from which it can be retrieved and examined. At the same time, a Rule 34 request for production of 'documents' should be understood to encompass, and the response should include, electronically stored information. . . ." Fed. R. Civ. P. 34 (Advisory Committee Notes to 2006 Amendments). Rule 34(b)(2)(E) governs the manner in which production of documents or electronically stored information ("ESI") must be made. The Rule states as follows:

> **(E)** *Producing the Documents or Electronically Stored Information.*
> Unless otherwise stipulated or ordered by the court, these

procedures apply to producing documents or electronically stored information:

**(i)** A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

**(ii)** If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

**(iii)** A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E). By it terms, Rule 34(b)(2)(E)(i) and (ii), concerning the production of documents or ESI respectively, permits the producing party, unless otherwise ordered by the Court, to choose which method to produce the items sought by the requesting party.[3] *See* Rule 34(b)(2)(E)(i) ("A party must produce documents as they are kept in the usual course of business *or* must organize and label them to correspond to the categories in the request.") (emphasis added); Rule 34(b)(2)(E)(ii) ("a party must produce [ESI] in a form or forms in which it is ordinarily maintained *or* in a reasonably usable form or forms") (emphasis added). Thus, "under the provisions of Rule 34(b)(2) a responding party clearly controls the manner in which production will occur, and specifically which of the two prescribed methods of production will be employed." *Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 334 (N.D.N.Y. 2008); *see Hill v. Stewart*, No. 10CV538S, 2011 WL 4439445, at *5 (W.D.N.Y. Sept. 23, 2011) ("[D]efendants are not obligated under the Federal Rules to organize their records to suit

---

[3] The Court has searched the expansive docket in this case and has been unable to find any agreement between the parties, oral or written, regarding the manner of production of electronically stored information ("ESI") by the parties. Had counsel undertaken an appropriate meet-and-confer at the beginning of this litigation regarding the production of ESI, it appears to the Court that some of the more significant disputes which have arisen could readily have been avoided.

plaintiff's discovery demands and plaintiff cites no authority to the contrary. Rule 34(b)(2)(E) gives the responding party the option either to produce the documents in the manner they usually keep the records or produce them in the categories sought; that rule does not require the responding party to alter their record keeping to meet the movant's discovery categories.").

With regard to documents produced in accordance with Rule 34(b)(2)(E)(i), where a producing party elects to produce such documents as they are kept in the usual course of business, a party "must do more than merely represent to the court that the party complied with Rule 34(b)(2)(E)(i)." *Distefano v. Law Offices of Barbara H. Katsos, PC*, No. CV 11-2893, 2013 WL 1339536, at *5 (E.D.N.Y. Mar. 29, 2013). Instead, courts generally require the party to explain how its documents are organized in the ordinary course of business and what steps the party took to search and produce the documents. *Id. see, e.g.*, *Century Jets Aviation LLC v. Alchemist Jet Air LLC*, No. 08–CV–9892, 2011 WL 724734, at *3–4 (S.D.N.Y. Feb. 8, 2011); *Synventive Molding Solutions, Inc. v. Husky Injection Molding Sys., Inc.*, 262 F.R.D. 365, 371 n. 9 (D. Vt. 2009); *Pass & Seymour, Inc.*, 255 at 333–38 (N.D.N.Y. 2008) (collecting cases); *see also Schrom v. Guardian Life Ins. Co. of Am.*, No. 11 CIV. 1680, 2012 WL 28138, at *6 (S.D.N.Y. Jan. 5, 2012) ("Where massive numbers of documents are involved, it may be necessary for the producing party to provide a complete explanation of its information management structure if it wishes to produce those documents in the manner that they are ordinarily stored."). However, the "rule does not require the responding party to alter their record keeping to meet the movant's discovery categories. *Hill*, 2011 WL 4439445, at *5; *see In re Adelphia Communications Corp.*, 338 B.R. 546, 551 (S.D.N.Y. 2005) (citing cases). Further, "[t]he most obvious means of complying with the requirement of Rule 34(b) to produce documents as they are kept in the usual course of business is to permit the requesting party to

inspect the documents where they are maintained, and in the manner in which they are organized by the producing party." *Pass & Seymour, Inc.*, 255 F.R.D. at 336.

## III.  GW DEFENDANTS' MOTION TO COMPEL [DE 428]

The GW Defendants have filed a motion requesting that Plaintiff be directed to "produce documents in a manner consistent with Rule 34 of the Federal Rules of Civil Procedure. . . ." DE 428 at 1.  Specifically, the GW Defendants assert that the production remains deficient because "the documents were produced on two CD Discs, without any reasonable means for the GW Defendants to determine the documents' relevance to the Parties' claims and defenses. . . ." *Id*.  According to the GW Defendants, "each of the electronic folders are simply labeled with a combination of names and numbers without any connection to the GW Defendants' document demands . . . [and] have no apparent correlation to the claim numbers listed on the Damages Spreadsheet which [ ] encompasses the totality of Plaintiff's alleged damages." *Id*. at 2.  Further, although the GW Defendants concede that they "could inspect the documents on the hard drive located at Plaintiff's counsel's office" they claim that "any in- person inspection . . . would still require the painstaking and time consuming comparison of 230,000 documents to claim numbers listed on the Spreadsheet." *Id*. at 3.  As such, the GW Defendants request that the Court "order Plaintiff to organize and label its document production" so that it corresponds to the categories in the request.  *Id*.

In response, Plaintiff asserts that:  (1) "the discovery documents were located in electronic format on our office server and immediately available for inspection;" (2) "the pertinent files could be copied by [the GW Defendants] onto flash drives or DVDs;" and (3) "the case management system is searchable by, among other identifiers, the insurance claim number corresponding to the fraudulent peer/IME reports, which would allow Defendants to quickly

locate those cases that are in the system and that they seek to inspect, and to ignore those documents that they deem irrelevant." DE 431 at 1. Plaintiff claims that the GW Defendants' objections to its production and its offer to permit inspection are without merit since the GW Defendants "made no effort to actually try to access the requested documents as they are ordinarily maintained" and that if an inspection was undertaken, it would be apparent that the documents relating to each of the 177 claims on the Damages Spreadsheet are "located on the server [and] are *already* organized and identifiable by claim number." *Id*. at 2 (emphasis in original). As such, to efficiently access the documents sought, Plaintiff states that the GW Defendants need only "execute 'claim number' searches for the claims sought, and then download the documents from the search onto whatever media they prefer." *Id*. Thus, according to Plaintiff, the "most efficient and best option that both fulfills the requirements of Rule 34 and allows Defendants access to the documents they demanded is for Defendants to come to Plaintiff's counsel's offices and inspect the database and retrieve the documents related to each of the 177 claims at issue." *Id*. at 3.

In support of its position that the database is searchable by the insurance claim number that corresponds to the "claim number" identified on the Damages Spreadsheet, Plaintiff has provided supporting documentation in the form of screenshots related to two searches they performed. *See* DE 431-2, 431-3. Specifically, Plaintiff conducted a search query utilizing each of the first two claim numbers on the Damages Spreadsheet — 0260911110101022 and 0291298980101016. *See* DE 431-2, 431-3; *see also* SAC, Ex. 7 (Damages Spreadsheet identifying the 177 claims at issue by Claim Number). The first screenshot contained in both DE 431-2 and 431-3, shows that the search query used is the field "Ins Claim #" which corresponds to each of the first two Claim Numbers in the Damages Spreadsheet. *See* DE 431-2,

431-3. The third screenshot shows the "Documents Tree" which appears to show all case documents corresponding to the particular claim number at issue. *Id.* In addition, the first eight digits following the document description identify the year, month and day that each document was uploaded to the database. *Id.* Based upon this documentation, it appears to the Court that the GW Defendants would, despite their position to the contrary, be able to query each of the 177 claims for which they seek documents without the need to compare each of the 230,000 documents to the 177 claim numbers at issue. Having considered Plaintiff's explanation as to the functioning of its database in conjunction with the supporting documentation provided — which establishes that the Plaintiff's database is searchable by each insurance claim number — and in the absence of supporting materials from Defendants which undermines Plaintiff's position in any way, the Court finds that Plaintiff's production meets the requirements of Rule 34.

As stated above, Plaintiff is not "obligated under the Federal Rules to organize [its] records to suit [Defendants'] discovery demands and [Defendants] cite [ ] no authority to the contrary. Rule 34(b)(2)(E) gives the responding party the option either to produce the documents in the manner they usually keep the records or produce them in the categories sought; that rule does not require the responding party to alter their record keeping to meet the movant's discovery categories." *Hill*, 2011 WL 4439445, at *5. Further, although courts generally require a party to provide some detail as to how its documents are organized in the usual course of business, *see Century Jets Aviation LLC*, 2011 WL 724734, at *3–4; *Synventive Molding Solutions, Inc.*, 262 F.R.D. 365, 371 n. 9; *Pass & Seymour, Inc.*, 255 at 333–38, the Court is satisfied that Plaintiff has done so here. Despite the GW Defendants' generalized objections, the Court does not find these objections persuasive, especially since no on-site inspection has, to date, been undertaken. Thus, to the extent the GW Defendants claim that such an inspection

would be fruitless since it would be both "painstaking and time consuming," *see* DE 428 at 3, such an assertion is unsupported by any convincing evidence in the record.

Typically, "[t]he most obvious means of complying with the requirement of Rule 34(b) to produce documents as they are kept in the usual course of business is to permit the requesting party to inspect the documents where they are maintained, and in the manner in which they are organized by the producing party." *Pass & Seymour, Inc.*, 255 F.R.D. at 336.  In the instant case, Plaintiff has offered to permit such an on-site inspection.  *See* DE 431 at 3.  Unless and until such an inspection is undertaken by Defendants and is shown to be unduly burdensome or otherwise inefficient (*i.e.*, because searches cannot be queried by the Claim Numbers identified on the Damages Spreadsheet), the Court finds — based on the submissions, Plaintiff's supporting documentation and the prevailing case law — that Plaintiff's offer to permit an inspection of the database comports with both the letter and the spirit of Rule 34.  *See* Rule 34(b)(2)(B) (providing for inspection of documents or ESI, or, *in the alternative*, production of such materials "instead of permitting inspection").  As such, the Court directs the parties to participate in a further meet-and-confer session in order to schedule a mutually agreeable date and time for the inspection to take place.  The inspection is to be conducted by September 29, 2016.  After the inspection takes place, if the GW Defendants have a good faith basis to believe that the production is still deficient, they may file an appropriate letter motion at that time.  Any such motion must be filed by October 12, 2016.

Based upon the foregoing analysis, the GW Defendants' motion is DENIED.

## IV.    NATIONWIDE DEFENDANTS' MOTION TO COMPEL [DE 432]

The Nationwide Defendants have filed a letter motion "joining in the GW Defendants' letter motion [DE 428], and to bring to the Court's attention some further insufficiencies in

plaintiff's document production. . . ." *See* DE 432 at 1. Specifically, the Nationwide Defendants have set forth specific instances where plaintiff has failed to produce documents and they ask this Court "to direct plaintiff to rectify" these alleged deficiencies in its production. The Court will address each alleged deficiency in turn. *Id.*

A. ***Document Request No. 9***

Document Request No. 9 seeks "[a]ll documents constituting or otherwise concerning plaintiff's receipt or recoupment of any monies in connection with any of the Claims." DE 432 at 1. Plaintiff asserts that it is entitled to these documents since "the receipt or recoupment of any monies is directly related to, inter alia, the amount of plaintiff's supposed damages and mitigation of any such supposed damages. Plaintiff cannot, on the one hand claim that it was 'damaged' in a certain amount with respect to a given Claim, while, on the other hand, refuse to provide defendants with information concerning the amount that plaintiff has already received as payment for that Claim." *Id.* at 2.

In response, Plaintiff maintains that the "Complaint explicitly states that damages sued for are already reduced by offsets, if any, that occurred [ ] during the litigation in the state actions. They are not at issue. Moreover, as the vast majority of claims listed on the 'Damages Spreadsheet' had no offsetting, there are no judgments, awards, settlements, etc., of any kind to disclose for those matters." DE 436 at 1.

As stated above, Rule 26(b)(1), as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley*, 2015 WL 9413101, at *2; *Denim Habit, LLC*, 2016 WL 2992124, at *3. Despite Plaintiff's assertion that Document Request No. 9 is "irrelevant" [DE 432 at 1], the

Court finds the proffered rationale unavailing. According to the Plaintiff, the Damages Spreadsheet, *see* SAC, Ex. 7, purportedly has taken into account any offsets from payments received on specific insurance claims. Notwithstanding that argument, the Court finds that the underlying documentation substantiating these offsets or recoupments is relevant and proportional to Plaintiff's damages claims. Defendants should appropriately be given the means and opportunity to probe the veracity of Plaintiff's assertions as to the existence and amount of any such offsets or recoupments. In addition, in their Answer to the SAC, the Nationwide Defendants assert that Plaintiff's damages "are barred, in whole or in part, by plaintiff's failure to mitigate its purported damages." Nationwide Defendants' Answer to Second Amended Complaint and Counterclaims [DE 382] ("Nationwide Defs.' Answer") ¶ 317. As such, the extent of any offsets or recoupments received by Plaintiff is relevant to this defense. *See Mitsubishi Elec. Corp. v. Westcode, Inc.*, No. 315CV505, 2016 WL 3855180, at *9 (N.D.N.Y. July 12, 2016) (noting that "any information that [defendant] seeks to obtain . . . would be available to it through discovery for its offset and recoupment counterclaim and defenses"); *see also Banks v. Corr. Servs. Corp.*, 475 F. Supp. 2d 189, 202 (E.D.N.Y. 2007) (recognizing availability of "discovery as to measure of damages" in an action for money damages). Thus, to extent these documents are in Plaintiff's custody or control and are not otherwise privileged, Plaintiff is directed to produce them to the Defendants no later than September 26, 2016.

### B. *Document Request No. 10*

Document Request No. 10 seeks "[a]ll documents constituting or otherwise concerning any settlement or other agreement entered into with, or any monies paid to plaintiff by, any defendant named, or formerly named, in this action." DE 432 at 2. The Nationwide Defendants assert the same rationale for this demand as they did in support of Document Request No. 9.

*See* DE 432 at 2. In response, Plaintiff states that "as the vast majority of claims listed on the 'Damages Spreadsheet' had no offsetting, there are no judgments, awards, settlements, etc., of any kind to disclose for those matters." DE 436 at 1.

"Prevailing authority within this Circuit holds that the discovery of settlement-related information is governed by [Rule 26(b)(1) ], and that no heightened showing of relevance need be made in order to justify the disclosure of a settlement agreement." *ABF Capital Mgt. v. Askin Capital Mgt.*, Nos. 96 Civ. 2978, 95 Civ. 8905, 97 Civ. 1856, 97 Civ. 4335, 98 Civ. 6178, 98 Civ. 7494, 2000 WL 191698, at *1 (S.D.N.Y. Feb. 10, 2000); *see Salgado v. Club Quarters, Inc.*, No. 96 Civ. 383, 1997 WL 269509, at * 1 (S.D.N.Y. May 20, 1997) (holding that no privilege attaches to settlement agreements and that no heightened showing need be made to justify discovery of settlement agreement[s]; *Rates Tech. Inc. v. Cablevision Sys. Corp.*, No. 05-CV-3583 DRH WDW, 2006 WL 3050879, at *3 n. 3 (E.D.N.Y. Oct. 20, 2006) (same); *Gen. Elec. Co. v. DR Sys., Inc.*, No. CV06-5581, 2007 WL 1791677, at *1 (E.D.N.Y. June 20, 2007) (recognizing that "Rule 26's relevancy standard applies to the disclosure of settlement documents" and no heightened showing is required); *see also Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 71507, at *3 (S.D.N.Y. Feb. 20, 1996) ("Chase misperceives the policy underlying Rule 408. The rule is not designed to lock away settlement documents, forever shielding them from view by those not a party to the agreement.")

Although the information sought in the instant request appears, at least in part, to be encompassed within Document Request No. 9, to the extent such information is not so included, the Court finds that such information should be produced to the Nationwide Defendants where it is not otherwise privileged and is in Plaintiff's custody and / or control. *See Johnson Matthey, Inc. v. Research Corp.*, No. 01-CV-8115, 2003 WL 24136087, at *3 (S.D.N.Y. June 16, 2003)

(finding that "no special showing must be made" apart from that required under Rule 26 and ordering production of settlement agreement); *Rates Tech. Inc.*, No. 05-CV-3583, 2006 WL 3050879, at *4 (directing plaintiff "to produce all documents concerning any . . . settlement agreements"); *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 564 (S.D.N.Y. 1977) (permitting post-judgment discovery of settlement agreement where privilege did not apply).

Similar to Document Request No. 9, the instant request is relevant in that it seeks documents which would tend to establish whether an agreement or settlement was reached with any defendants regarding the 177 claims at issue as set forth on the Damages Spreadsheet. Further, where any such settlement was reached, the amount of any offset / recoupment bears directly on the amount of damages Plaintiff is claiming in this case and is thus relevant to the claims and defenses being asserted. Therefore, Defendant should have the opportunity to verify the nature and extent of any such agreements or otherwise establish, through such production, what monies have been paid to Plaintiff by defendants concerning the claims at issue. Thus, to extent these documents are in Plaintiff's custody and / or control and are not otherwise privileged, Plaintiff is directed to produce them to the Defendants no later than September 26, 2016.

## C. *Document Request No. 11*

Document Request No. 11 seeks "[a]ll documents constituting or otherwise concerning any settlement or other agreement entered into with, or any monies paid to plaintiff by, any Third Party concerning any of the claims." DE 432 at 2. Both the Nationwide Defendants and Plaintiff rely on the same arguments interposed with regard to Document Requests 9 and 10. *See* DE 432 at 3; DE 436 at 1. Notably, in its initial response to this Document Request, Plaintiff stated that it would "produce [the documents sought in this request] to the extent such documents

are not subject to any privilege or confidentiality agreement. Specifically, Plaintiff will produce the settlement stipulations, including amounts, of any Claim litigated in Civil Court or before any arbitrator to the extent such stipulations are not subject to a confidentiality agreement." DE 432 at 3. Despite such apparent acquiescence, the Nationwide Defendants claim that "the CDs provided do not in fact appear to contain [this information.]" *Id*. at 4. Plaintiff does not address this argument in its opposition papers.

Similar to Document Request No. 10, the instant request appears to be, at least in part, encompassed within Document Request No. 9. However, to the extent this request can be interpreted to include documents that may not be responsive to Document Request No. 9, and for the reasons previously stated and the case law already cited, *see supra* at 14, the Court finds that such documents would be relevant and the request is proportional to the claims and defenses at issue and are therefore discoverable unless otherwise privileged.[4] *See Rates Tech. Inc.*, No. 05-CV-3583, 2006 WL 3050879, at *4; *Conopco, Inc. v. Wein*, No. 05 CIV. 9899, 2007 WL 1040676, at *6 (S.D.N.Y. Apr. 4, 2007) (finding settlement agreement relevant and directing production while noting that "the simple fact that the parties to the settlement agreement agreed to its confidentiality does not shield it from discovery") (internal citation omitted). Plaintiff is therefore directed to produce these documents no later than September 26, 2016. To the extent any documents are being withheld on the grounds of privilege or because they are "subject to a confidentiality agreement," Plaintiff is to produce a proper privilege log by September 26, 2016 as well.

---

[4] Both parties make specific arguments concerning the production of a settlement agreement entered into between Plaintiff and non-party GEICO in a separate lawsuit. However, the Court explicitly *excludes* this agreement from the scope of the instant ruling since subsequent to the filing of this motion, Plaintiff filed a letter motion seeking to quash the subpoena served on non-party GEICO by the GW Defendants which demanded, in part, production of the settlement agreement. *See* DE 459. This motion is *sub judice*.

### D. *Document Request No. 6*

Document Request 6 seeks "[w]ith respect to each of the Claims, all documents constituting or otherwise concerning plaintiff's first discovering that such Claim or any Report concerning such Claim was allegedly fraudulent, false, deceptive, or otherwise in any way improper." DE 432 at 3. According to the Nationwide Defendants, Plaintiff responded "will produce." DE 432 at 4. The Nationwide Defendants assert that they are "inarguably entitled to production of such documents, which bear directly on the statute of limitations issue in this case[.]" DE 436 at 4. Plaintiff has not addressed Document Request No. 6 at all in its opposition.

The Nationwide Defendants have asserted that "[t]he SAC is barred in whole or in part by the statute of limitations." Nationwide Defs.' Answer ¶ 306. Since the Nationwide Defendants are challenging the viability of some or all of Plaintiff's claims on statute of limitations grounds, this issue is relevant to the instant case. Further, the documents requested, which appear to bear upon such statute of limitations issues, are proportional to the needs of the case. As such, these documents are to be produced to the extent they are in Plaintiff's possession, custody or control and are not otherwise privileged. *See Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 327 (E.D.N.Y. 2012) (permitting discovery "to allow plaintiffs to investigate whether they have a basis to equitably estop [defendant] from asserting a statute of limitations defense; *In re Zyprexa Products Liab. Litig.*, 549 F. Supp. 2d 496, 531 (E.D.N.Y. 2008) (permitting discovery on statute of limitations issue).

Based upon the foregoing analysis, the Nationwide Defendants' motion is GRANTED to the extent set forth above.

**V. Plaintiff's Motion to Compel Documents from the GW Defendants and the Nationwide Defendants [DE 433, 434]**

### A. *Background Relating to Scope of Discovery*

#### 1. August 7, 2014 Status Conference

On August 7, 2014, the Court held a Status Conference with the parties. *See generally* August 7, 2014 Transcript of the Status Conference before the Hon. A. Kathleen Tomlinson [DE 325] ("Aug. 7, 2014 Tr."). Specifically, the Court reviewed the scope of discovery in light of the SAC which contained allegations related to 177 claims. *See* SAC, Ex. 7 (Damages Spreadsheet identifying the 177 insurance claims at issue). Specifically, the Court stated that

> one of my jobs here is to ensure that whatever discovery is conducted, that there's some proportionality here. And based on what I'm hearing about the purported damages that were noted in the Amended Complaint, it gives me pause based on what I heard your description of what you're asking for in discovery. So, I will tell you right now that based on what I've heard today, particularly with the Motion pending, whatever claims they're down to at this point is the scope of discovery you're allowed to ask about.
>
> I'm not going to preclude you from serving additional discovery if the Motion gets dismissed and if I find out that the parameters here are broader than what I'm limiting you to right now. So if that means a second wave of discovery, then we'll worry about a second wave of discovery. But for now, I'm cautioning you. I don't want to see any and all describing what I just heard a short time ago based on what I just heard from the Defendants. You know, you're all seasoned practitioners here. *You're to focus on the claims that we know about right now that deal specifically with the damages that you're claiming as a result of what you filed in your Amended Complaint*. And as I said, I'm not going to prejudice you or preclude you from conducting further discovery, paper discovery if it gets down to that -- once the Motion's decided, I'm not going to prejudice you in that regard at all. Your rights are preserved, but for now, these requests better be very narrowly tailored. And I just want to make sure everybody understands where we're going here.

Aug. 7, 2014 Tr. at 18-19.

### 2.    December 11, 2015 Status Conference

On December 11, 2015 the Court held a further Status Conference in which it again discussed the overall parameters of discovery in this action.  *See generally* DE 420.  The Court advised counsel that

> discovery [is going to be] conducted in the most expeditious, but also economically feasible manner. And from what I see here given the claims that have been knocked out and the fact that we continue to talk about these 177 claims, which according to the defendants the damages now are reduced to the sum of $149,000, we're going to manage discovery in that framework.

December 11, 2015 Transcript of the Status Conference before the Honorable A. Kathleen Tomlinson ("Dec. 11, 2015 Tr.") at 6-7.  In addition, based upon the universe of discovery potentially sought by Plaintiff, the Court further clarified that "the scope of these damages, the amount that it's going to cost, the projections from what I'm hearing from you, it's got to be narrowed more than it sounds like its being narrowed at the moment."  *Id*. at 14.  With regard to discovery related to the 177 claims as set forth in the Damages Spreadsheet, the Court set a discovery schedule with a fact discovery deadline of April 29, 2016.  In addition, all expert depositions were to be completed by July 29, 2016.[5]

### B.  *Plaintiff's Motion to Compel Documents from the GW Defendants [DE 433]*

Plaintiff filed a letter motion seeking to compel the GW Defendants to "provide complete and verified responses to Plaintiff's discovery demands and supplemental demands."  DE 433 at 1.  The letter motion itself consists of a "non-exhaustive sample of discovery demands that have not yet been complied with by Defendants."  Plaintiff seeks Court intervention to compel such production.  *Id*. at 2-3.

---

[5]     The Court notes that on July 12, 2016, Plaintiff renewed its motion — previously denied by the Court on June 27, 2016 [DE 487] — seeking an extension of the discovery deadlines.

In response, the GW Defendants assert that "[i]n contravention of the Court's directives, Plaintiff served document demands and interrogatories that vastly expand the scope of discovery beyond the 177 claims on Exhibit 7 [of the SAC] by, for example, seeking documents related to the 'sample' claims included in Exhibit 1 [of the SAC], as well as other documents that have no bearing on Plaintiff's claimed damages." DE 438 at 2. Further, although the GW Defendants state that they "would produce documents in their possession, custody and control that relate solely to the 177 claims . . . Plaintiff's counsel . . . made it clear that Plaintiff would not be satisfied with such a limited response. . . ." *Id*. at 3. The GW Defendants acknowledge that Plaintiff's letter motion "for the first time . . . appears to limit [ ] its document demands . . . to claims listed in Exhibit 7. If that is the case, the GW Defendants state that they "will produce relevant documents . . . limited to the claims included in Exhibit 7 and subject to the GW Defendants' general and specific objections to those demands." *Id*. at 3.

The Court initially points out that it does not intend to adjudicate similar discovery disputes in a piecemeal fashion. Specifically, Plaintiff represents in its letter motion that the two document requests and one interrogatory at issue represent only a "non-exhaustive sample of discovery demands that have not yet been complied with by Defendants." DE 433 at 2. However, Plaintiff makes no mention as to the overall depth and breadth of any other alleged deficiencies in document production or interrogatory responses other than to state that "it has not received a single document from any of the thirteen GW Defendants." *Id*. As such, it appears the primary issue is the wholesale production of documents and interrogatory responses by the GW Defendants in response to Plaintiff's document demands. Thus, for the Court to issue a ruling solely with respect to the three instances of alleged non-compliance highlighted in Plaintiff's letter motion is altogether inefficient where any such ruling would, in all likelihood,

lead to subsequent motions seeking further partial relief. Such an approach is an altogether inefficient use of the Court's limited judicial resources and does not promote judicial economy. *See, e.g.*, *Cullen v. Margiotta*, 618 F.2d 226, 228 (2d Cir. 1980) (recognizing that "Judicial economy will best be served by [waiting] until all issues can be confronted by this court in a unified package."). Further, the Court is not in a position to rule on discovery issues that are not properly before it. Plaintiff's complaint that it has not "received a single document from any of the thirteen GW Defendants," *id.*, while setting forth in its letter motion what appears to be a very small sampling of the alleged incomplete document requests and interrogatories, does little to place the purported universal discovery deficiency before the Court.

In any event, based upon the Court's directives issued at both the August 7, 2014 and December 11, 2015 Status Conferences regarding Plaintiff's permissible scope of the discovery — which is limited to the 177 claims contained in the Damages Spreadsheet (SAC, Ex. 7) — any discovery requests made by Plaintiff and any responses interposed by Defendants are required to be appropriately limited. The GW Defendants have agreed to "produce relevant documents . . . limited to the claims included in Exhibit 7 [of the SAC]," DE 438 at 3. In light of the fact that such responses would conform to the scope of discovery set by the Court, the GW Defendants are directed to respond to Plaintiff's discovery demands within 10 days of the entry of this Order.[6] All responses and / or document production are to be limited in scope to the 177 claims at issue. If the Court finds that either party is not acting in good faith, further action will be taken.

---

[6] The Court does not subscribe to the GW Defendants' questionable approach that they "have refrained from producing documents absent a direction from the Court that only documents related to Plaintiff's damage claim need be disclosed." *Id*. That excuse contravenes the Federal Rules regarding discovery obligations.

Based upon the foregoing analysis, Plaintiff's motion to compel production from the GW Defendants is GRANTED, in part, and DENIED, in part.

### C. Plaintiff's Motion to Compel Documents from the Nationwide Defendants [DE 434]

On January 13, 2016, Plaintiff filed a motion seeking to compel the Nationwide Defendants to provide "complete responses to Plaintiff's discovery demands and to produce documents responsive to those demands." DE 434 at 1. Specifically, Plaintiff has set forth three document requests and four interrogatories for which it asserts that the Nationwide Defendants' responses are insufficient. *See generally id*. The Court will review each in turn.

#### 1. Document Request No. 1

Document Request No. 1 seeks "[a]ny and all documents identified in Defendants' Rule 26 Disclosures." DE 434 at 2. Plaintiff asserts that as part of the Nationwide Defendants' Initial Disclosures, they represented that they were in possession of documents responsive to this request. *Id*. In addition, Plaintiff claims such documents are relevant since "they will be used to support Nationwide Defendants' defenses" and thus Nationwide should be compelled to produce these documents. *Id*. at 3.

In response, the Nationwide Defendants state that at the time they served their Initial Disclosures in September 2014, they conducted a "thorough search and investigation of their records, which revealed that the[y] . . . in fact did <u>not</u> have such documents, because [they] had no role with respect to those specific claims." DE 437 at 2 (emphasis in original). Further, the Nationwide Defendants claim that they alerted Plaintiff to this fact in January 2015 "as part of [their] discovery responses." *Id*.

Although Plaintiff takes issue with the "boilerplate" and "nonspecific objections" [DE 434 at 3] interposed by the Nationwide Defendants, the Court will not require production in

light of the representations made by the Nationwide Defendants that they are not in possession of any documents responsive to this request. To be sure, "defendants cannot be faulted for failing to produce records they do not have." *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 40 (S.D.N.Y. 2010), *opinion adopted*, 271 F.R.D. 55 (S.D.N.Y. 2010); *see Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("[A] party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain."); *see also Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y. 1992) ("[A] party can be compelled to produce documents only if it has either possession of the documents or 'control' of them, which is customarily interpreted as requiring that the party have 'the legal right to obtain the documents requested on demand.'") (internal citations omitted). Further, the Nationwide Defendants are not required to create documents responsive to Plaintiff's request. *See Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, No. 01 CIV. 7677, 2002 WL 31309232, at *4 (S.D.N.Y. Oct. 15, 2002) ("It is well-established . . . that courts may not compel the creation of documents to comply with a discovery demand."); *In re Air Crash Near Clarence Ctr., N.Y.*, No. 09-CV-769S, 2013 WL 6073635, at *4 (W.D.N.Y. Nov. 18, 2013) ("Plaintiff is not required . . . to create an asset or valuation list, or any other documents, in response to [defendants' discovery] demand.").

In the instant case, counsel for the Nationwide Defendants has represented that no documents responsive to Plaintiff's request are in the possession of his clients. *See* DE 437 at 2. Based on that representation, the Court will require the client (or a supervisory employee of the client with first-hand knowledge) to provide an affidavit setting forth (1) the specific details of the search undertaken for these materials; (2) what was discovered as a result of the search; and (3) to the extent the Nationwide Defendants maintain that no responsive materials were found,

the defendants' particularized explanation as to why no materials were uncovered. The affidavit is to be filed with the Court within 14 days of the entry of this Order.

### 2. Document Request No. 3

Document Request No. 3 seeks "[a]ny and all financial documents, including corporate books, 1099s, W-2s, W-3s, tax returns, canceled checks, bank records, and/or accounting records regarding Nationwide." DE 434 at 3. Plaintiff argues that this information is relevant in light of the RICO allegations in the Complaint. *See id.* Specifically, Plaintiff states that these financial documents are necessary in order to: (a) assess the financial relationship and structure of the RICO enterprise; (b) measure the extent and scope of Defendants' fraud; (c) determine the financial relationship between the members of the RICO enterprise and third parties; (d) prove Defendants' motive; (e) identify witnesses or other persons involved in the fraudulent scheme; and (f) prove Plaintiff's damages." *Id.* In addition, based on the allegation that "Defendants participated in an extensive fraudulent scheme to manufacture fraudulent peer review and IME reports universally recommending that insurance claims be denied," *id.*, Plaintiff seeks disclosure of this financial information in order to illustrate "that Defendants personally benefitted from their participation in this scheme." *Id.* According to Plaintiff, tax returns and bank records would serve as evidence of the Defendants' financial stake in the continuing fraud. Plaintiff also intends to use the financial records to outline the financial relationships between Defendants and to demonstrate Defendants' participation in a common fraudulent scheme." *Id.*

In response, the Nationwide Defendants assert that the request is "grossly overbroad and improper, calling for the production of every single financial document, including tax returns, from the entire history of Nationwide." DE 437 at 2. Specifically, the Nationwide Defendants claim that the discovery sought here "is utterly disproportional to the scope and needs of this

case . . . [and is] a classic fishing expedition . . . [and that in any event] plaintiff has failed to demonstrate a valid no less compelling, reason for production." *Id.*

The SAC alleges that Nationwide Management, Inc. is "owned and managed by Manager Defendants Svetlana Osiashvili, Benjamin Osiashvili and Mikhael Osiashvili." SAC ¶ 14. In addition, Plaintiff claims that this entity "is used by its owners as an instrument to control Patient Focus [Medical Examinations, PC d/b/a All Borough Medical (a named defendant)] and to funnel money to them." *Id.* Patient Focus Medical Examinations, PC ("Patient Focus") in turn is alleged to have

> provided back office and clerical services to peer review and IMEs vendors that operate in New York's no-fault and workers' compensation industries. At all relevant times, PATIENT FOCUS managed an IME practice under its d/b/a name "All Borough" and split fees with licensed medical consultants who performed IMEs. According to the NYS Department of State, PATIENT FOCUS is owned by Defendant Tatiana Sharahy, MD. However, PATIENT FOCUS is in fact a *Mallela* corporation doing business in violation of the Business Corporation Laws of New York. PATIENT FOCUS utilizes various management companies to direct money to the PC's true owners who, in actuality, own and control the company in violation of New York law. The true owners of PATIENT FOCUS are Defendants Svetlana Osiashvili, Benjamin Osiashvili, Mikhael Osiashvili, Aleksey Vayner, and the remaining above-captioned Manager Defendants and Management Company Defendants.

*Id.* ¶ 13. Further, Plaintiff asserts that the Nationwide Defendants

> participated in the conduct of SCS's affairs through a pattern of racketeering activity. Said pattern includes intentionally causing to be prepared and mailed fraudulent peer review and IME reports on a continuous basis for several years, causing claims for reimbursement submitted by Plaintiff to be denied. The reports are the result of pre-ordained decisions, are the work product of non-licensed entities, and deemed the medical services at issue to be not medically necessary on a predetermined basis regardless of the merits of the claims.

> . . .

By filing numerous fraudulent reports in an ongoing scheme, the [Nationwide] Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c).

*Id*. ¶¶ 147, 153; *see* ¶¶ 161-176; 209-240.

As previously observed, Rule 26(b)(1) requires that the discovery sought is both relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Sibley*, 2015 WL 9413101, at *2. When determining proportionality, the court balances "the value of the requested discovery against the cost of its production." *In re Weatherford Int'l Sec. Litig.*, No. 11 CIV. 1646, 2013 WL 2355451, at *5 (S.D.N.Y. May 28, 2013); *see Pippins v. KPMG* LLP, 279 F.R.D. 245, 256 (S.D.N.Y. 2012). Once the requesting party has made a *prima facie* showing of relevance, *In re Weatherford Int'l Sec. Litig.*, 2013 WL 2355451, at *3; *Barbara*, 2013 WL 1952308, at *2, "it is up to the responding party to justify curtailing discovery." *Fireman's Fund Insurance Co. v. Great American Insurance Co. of New York*, 284 F.R.D. 132, 134 (S.D.N.Y. 2012). However, "conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Melendez v. Greiner*, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003); *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011) (same); *Diaz v. Local 338 of Retail, Wholesale Dep't Store Union, United Food & Commercial Workers*, No. 13-CV-7187, 2014 WL 4384712, at *2 (E.D.N.Y. Sept. 3, 2014) (same). Rather, "[a] party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive . . . submitting affidavits or offering evidence revealing the nature of the burden.'" *Vidal v. Metro–North Commuter Railroad Co.*, No. 3:12CV248, 2013 WL 1310504, at *1 (D. Conn. March 28, 2013) (alteration in original) (quoting *Compagnie Francaise d'Assurance Pour le Commerce*

*Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)); *In re Weatherford Int'l Sec. Litig.*, 2013 WL 2355451, at *4; *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014); *Diaz*, 2014 WL 4384712, at *2.

In the instant case, based upon the allegations set forth in the SAC, coupled with Plaintiff's proffer that the financial documents sought are necessary to the underlying RICO cause of action and the fraudulent acts of the enterprise, the Court finds that Plaintiff has shown that some of the financial documents sought are relevant. The Court points out that the Nationwide Defendants do little more than interpose boilerplate generalized objections which fail to set forth, with particularity, why and how the documents sought lack relevance.

Although such discovery is relevant, it must also be proportional to the needs of the case. *Sibley*, 2015 WL 9413101, at *2. After reviewing this request in light of the limited nature and extent of the claims comprising the SAC, the Court finds that as written, the request is overly broad and unduly burdensome in scope. This case has been narrowed to encompass only the 177 insurance claims set forth in the Damages Spreadsheet. *See* SAC, Ex. 7. In addition, the total damages sought by Plaintiff are approximately $150,000. *See id*. (*ad damnum* clause). The vast majority of the 177 claims at issue span a time period of approximately three years (January 2007 through January 2010) as measured from the earliest (November 3, 2006) and latest (January 18, 2010) Dates of Service enumerated in the Damages Spreadsheet. *See* SAC, Ex. 7. As such, this request needs to be narrowly tailored to encompass financial documents limited in scope to the three-year time period encompassing the 177 claims in this action. To further enlarge this temporal period would result in the burden outweighing the potential benefit which would contravene the requirement that discovery be proportional to the needs of each case. *See State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 CIV 9792, 2015 WL 7871037, at *4 (S.D.N.Y.

Dec. 3, 2015) ("Rule 26(b)(1) instructs parties and courts to evaluate whether the benefit of the discovery sought is proportional to the burden of producing it, taking into account issues like access, importance, and available resources.").  In addition, the categories of documents must be narrowed as well.

The Nationwide Defendants assert that such financial documents are "entirely irrelevant" and that Plaintiff has "failed to demonstrate a valid, no less compelling, reason for production," DE 437 at 2.  The Court finds this generalized objection unavailing.  Indeed, "a court will order tax returns and other sensitive financial information produced where it is relevant to the action and there is a compelling need for the documents because the information is not otherwise readily available."  *Fayda*, 2015 WL 7871037, at *4 (S.D.N.Y. Dec. 3, 2015) (citing *Rahman v. Smith & Wollensky Restaurant Group*, No. 06 Civ. 6198, 2007 WL 1521117, at *7 (S.D.N.Y. May 24, 2007)).  Generally, "the party resisting disclosure should bear the burden of establishing alternative sources for the information."  *Rahman*, 2007 WL 1521117, at *7 (quoting *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988)); *Fayda*, 2015 WL 7871037, at *4.  In the instant case, the Nationwide Defendants have "failed to rebut [Plaintiff's] showing that the financial records are relevant and material to its case against them.  Nor have they established that [ ] [P]laintiff has an alternative source for the information . . . ."  *Fayda*, 2015 WL 7871037, at *4.  In addition, to the extent the Nationwide Defendants assert that such information is "sensitive" [DE 434 at 2], the information will be subject to the protections afforded by the Confidentiality Order entered in this case.  Thus, this objection does not "constitute a reason to wall off this relevant information[.]"  *Id.* at *5; *see Conopco, Inc. v. Wein*, No. 05 CIV. 09899, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007) ("[T]o the extent that the financial information Plaintiff seeks is relevant, it must be produced.

Its confidentiality can be protected by a variety of means, most notably the Confidentiality Order entered in this action."); *Brassco, Inc. v. Klip*, No. 99 Civ. 3014, 2004 WL 1385816, at *2 (S.D.N.Y. June 21, 2004) (concluding that bank records that may show financial gain from allegedly improper transactions are not privileged, and any privacy interest can be addressed by a protective order); *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 156 (E.D.N.Y. 2005).

Based on the foregoing analysis, the Nationwide Defendants are directed to produce the financial documents requested as follows: (1) copy and produce — or, in the alternative, make available for inspection — the corporate books and records solely for the three-year time period (November 2006 through January 2010) involving the 177 insurance claims at issue; and (2) utilize the same procedure for the W-2s, W-3s, and tax returns for the period of November 2006 through January 2010. At this time, the Court will not require the Nationwide Defendants to produce canceled checks, bank records and/or accounting records. Once the production of items (1) and (2) have been completed and have been assessed by the Plaintiff, if and only if the Plaintiff can establish "good cause" for any further production may the Plaintiff come back to the Court with a further motion. These documents are to be produced within 21 days of entry of this Order or made available for inspection and copying within 10 days.

### 3. Document Request No. 15

Document Request No. 15 seeks "[a]ll lease agreements, rental agreements, invoices, or subscriptions for any equipment, furniture, medical instruments, medical information services, insurance industry information leased, rented, used or paid for by Defendant since January 1, 2004 and used, consulted, and paid for in connection with the preparation for or conduct of any report identified in Exhibits 1 and 7 to the Amended Complaint." DE 434 at 4. Plaintiff

contends that such information is relevant because "rental agreements, leases, invoices, and subscriptions for the enumerated goods and services will establishing [*sic*] that [the] Nationwide Defendants benefitted from illegal fee-splitting with defendant doctors and professional corporations and the level of control they had over the conduct of IMEs." *Id.*

In opposition, the Nationwide Defendants argue only that this request is "flawed for much the same reasons [as Document Request No. 3], calling for a vast array of irrelevant business and real estate documents that have absolutely no bearing on the propriety of the defendants' purported role in the denial of the 177 specific no-fault claims that are the sole matters at issue here." DE 437 at 2. The Court finds that the information sought is of some relevance, based upon the allegations as set forth in Section C. 2. *supra*, in conjunction with Plaintiff's rationale as set forth above. In addition, at least one court has found such material to be discoverable in the context of a civil RICO action. *See CPT Med. Servs., P.C.*, 375 F. Supp. 2d at 156 (finding documents "relating to any agreements, including but not limited to leases, contracts and rental agreements" to be discoverable in context of RICO action). Further, for the same reasons as discussed in the context of Document Request No. 3, the Court finds Defendants' generalized and conclusory objections to be unpersuasive and not in compliance with the Federal Rules. *See Trilegiant Corp.*, 275 F.R.D. at 431; *Diaz*, 2014 WL 4384712, at *2. However, similar to Document Request No. 3, Plaintiff's request here is not proportional to the needs of this case. As written, it is overly broad and unduly burdensome in relation to the limited claims and time period at issue. Therefore, to ensure that proper proportionality is achieved, the Court directs the Nationwide Defendants to produce the documents in the same

manner and within the same time frame as the Court has ordered for the materials responsive to Document Request No. 3.[7]

### 4. Interrogatory No. 2

Interrogatory No. 2 seeks the identities "of all owners, shareholders, owners [*sic*], board members, employees, and independent contractors of Nationwide from March 1, 2007 until the present." DE 434 at 4. Plaintiff asserts that such information "is relevant to the structure and organization of Defendants' fraudulent scheme and may identify additional persons involved in its creation and maintenance." *Id*.

In response, the Nationwide Defendants state that this request is "tremendously overbroad, burdensome, and harassing, and seeks information that is patently irrelevant to the limited issues in this suit." DE 437 at 2. However, notwithstanding this objection, Defendants state that they are "amenable to providing the names of any owners or officers of Nationwide during the time period in which the specific claims at issue in the suit arose." *Id*.

Based on Plaintiff's rationale and notwithstanding Defendants' generalized objections, the Court finds that the identities of the corporate principals of Nationwide, including its owners, officers/directors and board members are relevant in terms of information that may assist Plaintiff in unraveling the structure and scope of the fraud alleged to have taken place in this case. On the other hand, the Court is not convinced that the identities of employees and independent contractors of Nationwide are discoverable since Plaintiff has failed to articulate, even in general terms, the nature and extent of employee involvement in the purported scheme, nor any involvement on the part of independent contractors. Further, although the discovery

---

[7]     This ruling does not apply to any reports identified in Exhibit 1 referenced in Document Request No. 15 since Defendants have no obligation to produce any information concerning Exhibit 1.

sought encompasses "March 1, 2007 until the present" [DE 434 at 4], this timeframe is overboard in light of the claims at issue. As such, the Court modifies the discoverable period in this request to March 2007 through January 2010 — the time period covering the 177 claims involved in this action. *See* SAC, Ex. 7. Therefore, the Nationwide Defendants are directed produce by September 26, 2016, the identities of all owners, officers/directors and board members of Nationwide for the period running from March 2007 through January 2010.

### 5. Interrogatory No. 7

Interrogatory No. 7 seeks the disclosure of "any and all bank accounts from which monies were either withdrawn or into which any monies were deposited in connection with payment for the creation or transmission of the reports identified in Exhibits l and 7 to the Second Amended Complaint, or for appearances at court in support of the reports identified in Exhibits l and 7 to the Second Amended Complaint. This includes all such bank accounts under your name and those held under the name of your corporation Nationwide." DE 434 at 5. Similar to Document Request No. 3, Plaintiff asserts that the disclosure of these "financial records are relevant and discoverable in RICO suits." *Id.*

In opposing the motion as to this interrogatory, the Nationwide Defendants claim only that the information sought here, similar to Document Request No. 3, is nothing more than a "fishing expedition into the Nationwide Defendants' financial affairs" and constitutes nothing more than an "undirected rummaging through bank books and records for evidence of some unknown wrongdoing." DE 437 at 2-3.

In light of the nature of the claims at issue — which allege, in part, that the Nationwide Defendants utilized Nationwide Management Inc. "as an instrument to control Patient Focus and to funnel money to them" [SAC ¶ 14] — and similar to the rationale provided with respect to its

analysis of the financial records sought as part of Document Request No. 3, the Court likewise finds that the bank account information is relevant in so far as it may provide evidence "of how the enterprise operates, and of the role [the Nationwide Defendants] play[ed] in the enterprise." *Conopco, Inc.*, 2007 WL 2119507, at *3; *see Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372, 375 (W.D.N.Y. 2006) (permitting discovery of bank account information where "plaintiffs have asserted broad civil RICO claims against the [ ] defendants").  Indeed, in order to establish a RICO claim, "the defendant must be involved in conducting or participating in the conduct of the RICO enterprise's affairs; that is, she must have some part in directing the enterprise's affairs." *Conopco*, 2007 WL 2119507, at *3; *see Reves v. Ernst & Young*, 507 U.S. 170, 179, 113 S. Ct. 1163, 1170, 122 L. Ed. 2d 525 (1973); *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994); *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996); *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 223 (E.D.N.Y. 2014). The bank account information sought may also yield evidence concerning the use of the income derived from the alleged RICO activities as well as how the proceeds were funneled and utilized in furtherance of the operation of the alleged conspiracy.

However, although relevant, this request suffers from the same infirmity as the other requests in Plaintiff's motion.  The interrogatory is overly broad and not proportional to the needs of the case.  As previously stated, the only claims at issue in this case are the 177 claims encompassed within the Damages Spreadsheet.  As such, this discovery is to be limited in both time and scope to align with the 177 claims in this case.  Therefore, the Nationwide Defendants are directed to produce the bank account information requested, but restricted to the 177 claims at issue and to the three-year time period (November 2006 through January 2010) involved in these claims.  These materials are to be submitted by September 16, 2016.

### 6. Interrogatory No. 9

Interrogatory No. 9 seeks the identification of

> any oral agreements with any other Defendant, or any oral
> agreement with any other entity relating to the provision of the
> reports identified in Exhibit 1 and 7 to the Second Amended
> Complaint, or the provision of doctors or other professionals for
> testimony in support of the reports identified in Exhibit 1 and 7 to
> the Second Amended Complaint, including the terms of any such
> agreement, when such agreement was made, any modification to
> such agreement, and the date any such agreement or modification
> became, will become, or would have become effective. Such
> agreements include any oral modifications to any written agreement.

DE 434 at 5. Plaintiff claims that such information "is relevant because it relates to establishing

the operation, structure and organization of Defendants' fraudulent enterprise." *Id*.

The Nationwide Defendants argue that the interrogatory is "nearly impossible to

understand." DE 437 at 3. Further, it appears that the Nationwide Defendants have responded to

this interrogatory since, as Plaintiff states in its motion, "the Nationwide Defendants state that

they did not enter into any oral agreements specifically addressing the no-fault claims that are the

subject of the Second Amended Complaint, the claims set forth in Exhibit 7 to the Second

Amended Complaint." DE 434 at 6. In their opposition, the Nationwide Defendants confirm the

fact that an answer has already been provided as to the claims encompassed within the Damages

Spreadsheet. *See* SAC, Ex. 7. Since Plaintiff has received an answer to this interrogatory with

respect to Exhibit 7, the only issue remaining is the extent to which Plaintiff seeks further

amplification concerning any claims set forth in Exhibit 1 of the SAC. However, such claims are

not the subject of the instant litigation. Therefore, any discovery as to those claims is not

relevant nor proportional to the needs of the case. As such, the Nationwide Defendants will not

be required to provide any further response to this interrogatory.

### 7. Interrogatory No. 11

Interrogatory No. 11 seeks the identification of "all training materials you have produced, bought or provided to any person relating to the provision or creation of the reports identified in Exhibits l and 7 to the Second Amended Complaint, or the provision of doctors or other professionals for testimony in support of the reports identified in Exhibits l and 7 to the Second Amended Complaint, including any employee guidelines, handbooks, code books, or rules so used." DE 434 at 6. Plaintiff claims that this information is relevant "because it goes to the heart of Nationwide Defendants' participation in the fraudulent scheme to produce sham peer review and IME reports. Such information will also demonstrate their role as the coordinators of the scheme, as they orchestrated both the method behind the creation of the fraudulent reports and the doctors' testimony in support of the fraudulent reports." *Id.* In response, the Nationwide Defendants state merely that this request is "entirely baseless" since it seeks "materials that are immaterial to the matter at issue in this suit[.]" DE 437 at 3.

Although it is a close question, at this stage of the proceedings, the Court finds that Plaintiff has set forth enough of a basis to show that this interrogatory is at least marginally relevant. Reviewing the allegations in the SAC, the Nationwide Defendants are alleged to have "entered into a partnership that allowed for the mass production of peer review and IME reports pursuant to a fraudulent protocol." SAC ¶ 81. In addition, they are purportedly "responsible for many of the administrative duties related to [the] scheme." SAC ¶ 83. Therefore, the information sought may provide further evidence as to the overall extent and ultimate role of the Nationwide Defendants' participation in the scheme. However, once again, the scope of this discovery shall be limited to the 177 claims at issue and are likewise limited to the three-year

time period (November 2006 through January 2010) involved in these claims. The Nationwide

Defendants are directed to respond to this interrogatory within 21 days of the entry of this Order.

**VI.**    <u>CONCLUSION</u>

For all of the foregoing reasons:

(1) The GW Defendants' motion to compel production from Sky Medical [DE 428] is

DENIED;

(2) The Nationwide Defendants' motion to compel production from Sky Medical

[DE 432] is GRANTED;

(3) Sky Medical's motion to compel production from the GW Defendants [DE 433] is

GRANTED, in part, and DENIED, in part; and

(4) Sky Medical's motion to compel production from the Nationwide Defendants

[DE 434] is GRANTED, in part, and DENIED, in part, to the extent set forth in this

Memorandum and Order.


**SO ORDERED.**

Dated: Central Islip, New York
         September 7, 2016

                                             /s/ A. Kathleen Tomlinson
                                             A. KATHLEEN TOMLINSON
                                             United States Magistrate Judge