

**GTPC**   GARY TSIRELMAN P.C.

ATTORNEYS & COUNSELORS AT LAW

129 LIVINGSTON STREET
SECOND & THIRD FLOORS
BROOKLYN, NY 11201
T: (718) 438-1200 • F: (718) 438-8883
sbelinfanti@gtmdjd.com

03/03/2017

Honorable A. Kathleen Tomlinson
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

RE :   **Sky Medical v SCS Support Claims Services, Inc. et al., Case # 12-CV-
06383 (Letter Motion Regarding Scope of Discovery)**

Dear Judge Tomlinson,

Plaintiff Sky Medical Supply Inc. ("Sky") submits this letter pursuant to *DE 516*, in which the Court directed the parties to file letter motions concerning "whether the overall scope of prospective discovery permitted by the Court in *DE 503* was restricted to: (1) solely the 177 claims in the Damages Spreadsheet, or, instead (2) any relevant documents within the three-year statute of limitations period, namely, November 2006 through January 2010."

Sky asserts that discovery pertaining to the above-mentioned three-year time period is relevant and essential to the prosecution of this action. This position is consistent with Your Honor's ruling in *DE 503*, where the Court addressed proportionality and held that discovery was to encompass the three-year time span incorporating the 177 claims. For instance, regarding Document Request No. 3, the Court held: "The vast majority of the 177 claims at issue span a time period of approximately three years ... as such, this request needs to be narrowly tailored to encompass financial documents limited in scope to the *three-year time period encompassing the 177 claims* in this action." [Emphasis added]. *DE 503, pg. 24*. Concerning Document Request No.15, the Court ruled that "to ensure that proper proportionality is achieved, the Court directs the Nationwide Defendants to produce the documents in the same manner and within the same time frame as the Court has ordered for the materials responsive to Document Request No. 3". *Id. at 29*. With respect to Interrogatory No. 2, the Court "modifie[d] the discoverable period in this request to March 2007 through January 2010 — the time period *covering* the 177 claims involved in this action." *Id. at 31*. Since the very nature of bank records would make it impossible to link them to the specific claims, the Court reaffirmed its position with Interrogatory No. 7 ("Therefore, the Nationwide Defendants are directed to produce the bank account information requested, but restricted to the 177 claims at issue *and to the three-year time period (*November 2006 through January 2010) involved in these claims") and did so once again with Interrogatory No. 11, relating to creation of the peer and IME reports. *Id. at 32 and 35*. Thus the Court plainly limited discovery to the three-year time period *including* the 177 claims and not, as Defendants contend, to the 177 claims *instead* of the three-year time period. A contrary interpretation would be illogical considering the breadth of the RICO and fraud charges,

the fact that correlation of some of those items to the 177 claims would be unachievable and because, as set forth below, such a restriction would make proving Sky's allegations impossible.

Sky requires discovery beyond the 177 claims to establish the underlying fraud and the elements of the RICO causes of action.   For example, Sky alleges that as part of the scheme to universally deny claims by health providers, Doctor Defendants permit laypersons to use their names and electronic signatures to create and sign peer and independent medical examination ("IME") reports under the guise of being the doctors' work product.   This allows for the reports to be produced in such massive quantities that they could not possibly be the result of good faith analysis by medical experts.   Sky intends to prove that during the three-year time period, reports were created at a rate that defies credibility, particularly in light of the amount of medical records allegedly reviewed.   Limiting discovery to the reports for the 177 claims and their corresponding medical records would ignore thousands of other reports each Doctor Defendant "created" and the reams of medical records "reviewed" during the same time period.   Such a result would negate any possibility of proving this allegation.   As further indication that the reports were in fact created by laypeople and lack any true medical analysis, Sky alleges that Doctor Defendants are paid a nominal sum for each report that is well below industry standards and a fraction of what other medical professionals charge for legitimate reports.[1]   Again, discovery relevant to the three-year period is required to establish this.   Sky also alleges that although the reports state that the conclusions therein are based on analysis of the underlying medical records, such conclusions are actually preordained; specifically, they universally deny the medical necessity of services administered by health providers regardless of the patients' condition or the specifics of the medical records purportedly reviewed.   Restricting discovery to the 177 claims will prevent Sky from obtaining relevant evidence that Defendants produce reports pursuant to a general fraudulent protocol as opposed to merely denying these particular claims while approving others.   Conversely, allowing for reports spanning the three years will support Sky's allegations by revealing that all of the reports reach the same conclusion of lack of medical necessity.

Regarding the scheme's breadth, Sky alleges that Defendants' scheme was aimed not just at Sky, but rather at all health providers whose services Defendants found to be medically unnecessary, undermining Defendants' assertion that Sky is simply a disgruntled outlier.   Again, discovery covering the three years is both relevant and necessary to prove this.   *Sky Medical Supply Inc. v. SCS Support Claim Services, Inc. et al*, 17 F.Supp.3d 207(2014) (" [w]hile Plaintiff may not be able to collect damages with respect to the injuries of other unnamed parties, it does not necessarily follow that Plaintiff may not allege injury to others in support of allegations of an ongoing fraudulent scheme, or pattern of racketeering activity.") [2] All other allegations including but not limited to those of plagiarism and mischaracterization of the medical records and literature cited in the reports require discovery beyond the177 claims.

The same analysis applies to financial records, for which the Court already utilized the three-year rule.   Patient Focus' bank records spanning the three-year period confirm some of Sky's allegations, which would not have been possible had they been confined to the 177

---

[1] Most of the revenue from report creation was filtered to Manager Defendants, who controlled the laypersons.

[2] See *SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d at 80 ("[I]f only those acts involving the named plaintiff could be considered when "determining the continuity of any scheme, 'then schemes could remain in force…'").

claims.[3]   For example, concerning the allegation that the reports were created at an incredible volume and cost, the bank records reveal that over the course of three months Doctor Defendant Julio Westerband, MD, was paid for "creating" over 2,100 peer and IME reports, examining over 1,400 individuals, reviewing medical records for over 2,000 claimants and appearing in court to testify on 24 of those days.  His fee per report - and that of the other Doctor Defendants who are identified in the bank records - was woefully minimal, while his fee for each IME, including patient examination, record review and report creation, was equally implausible. As Sky alleged, this same Defendant has, along with other Doctor Defendants, been accused by independent arbitrators of creating fraudulent reports.   Sky also alleges that the majority of the money resulting from the reports' creation was filtered to SCS and Manager Defendants, who in turn paid the laypersons who created the reports.   Indeed over the course of two months, Patient Focus collected approximately $150,000 for peer review and IME reports bearing Westerband's name; however, Westerband was paid a small portion of those funds while the majority was passed on to Manager Defendants.  With respect to Sharahy, the "paper owner" of Patient Focus, she was paid approximately one-tenth the money that was filtered to Manager Defendants through their shell companies, which include Nationwide Management Co.  This information goes to the heart of Sky's allegations and could not have been obtained had bank records been restricted to the 177 claims.  In fact, it is unclear how financial records would even be able to be tied to the specific 177 claims in the first place. Further discovery of Defendants' bank records is needed to establish Defendants' motive as well as identify other intermediaries used by Defendants to launder the proceeds of their fraudulent scheme.[4]

All of the above allegations are integral to Sky's RICO and common law fraud claims. Discovery encompassing the three-year period is not only relevant, it is essential. To find that discovery is restricted to the 177 claims would conflate the requirements that Plaintiff prove the *damages* it sustained with proving the elements of the fraudulent scheme that *resulted* in those damages, when Sky must actually prove both. Sky must establish the overall pattern of conduct and the structure of the RICO enterprise that resulted in its injuries to substantiate its claims of RICO violations and common law fraud; otherwise, such claims will exist in a vacuum with no frame of reference.  With respect to proportionality under Rule 26(b)(2)(1), the Court has already ruled at *DE 503* that relevant discovery spanning the three-year period is proportional in this matter, significantly narrowing the discovery time span that Sky initially sought.

Therefore in light of the above, Sky respectfully requests confirmation from the Court that the three-year time period is the appropriate measure for scope of discovery in this action.

Respectfully,

_____

Stefan Belinfanti

---

[3] The bank records were obtained by subpoena in on or about March 15, 2016.
[4] *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 U.S. Dist. LEXIS 162164, at *11 (S.D.N.Y. Dec. 3, 2015).