**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
SKY MEDICAL SUPPLY INC.,

Plaintiff,

- against -

SCS SUPPORT CLAIM SERVICES, INC.,
PATIENT FOCUS MEDICAL EXAMINATIONS,
PC d/b/a ALL BOROUGH MEDICAL, PC,
NATIONWIDE MANAGEMENT INC., BAB
MANAGEMENT INC., MANAGEMENT
COMPANY A, MANA GEMENT COMPANY B,
MANAGEMENT COMPANY C,
MANAGEMENT COMPANY D,
MANAGEMENT COMPANY E, BENJAMIN
OSIASHVILI a.k.a VENIAMIN OSIASHVILI,
MIKAEL OSIASHVILI a.k.a MICHAEL
OSIASHVILI, SVETLANA OSIASHVILI,
ALEKSEY VAYNER a.k.a ALEX VAYNER,
EITAN DAGAN, MANAGER DEFENDANT A,
MANAGER DEFENDANT B, MANAGER
DEFENDANT C, MANAGER DEFENDANT D,
MANAGER DEFENDANT E, TATIANA
SHARAHY, MD, MITCHELL EHRLICH, MD,
JOSEPH C. COLE, MD, JULIO WESTERBAND,
MD, WILLIAM A. ROSS, MD, RENAT R.
SUKHOV, MD, WILLIAM S. KRITZBERG, MD,
ROBERT A. SOHN, DC, STANLEY ROSS, MD,
MITCHELL L. WEISMAN, MD, MARK WEBER,
MD, GARY J. FLORIO, MD, ANTONIO
MARTINS, MD, DAMION A. MARTINS, MD,
M.S., DANTE BRITTIS, MD, CHRISTOPHER
FERRANTE, DC, BRIAN FREINDLICH, DC,
WAYNE KERNESS, MD, DENIS MANN, DC,
ANDREW MILLER, MD, ANDREW BAZOS,
MD, DREW STEIN, MD, LINDA ACKERMAN
and EVGENIYA VAKIDOVA,

Defendants.
------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**MEMORANDUM**
**AND ORDER**

CV 12-6383 (JFB) (AKT)

# I. PRELIMINARY STATEMENT

Plaintiff Sky Medical Supply Inc. ("Plaintiff" or "Sky Medical") brings the instant action against SCS Support Claim Services, Inc., Patient Focus Medical Examinations, PC d/b/a All Borough Medical, PC, Nationwide Management Inc., BAB Management Inc., Management Company A, Management Company B, Management Company C, Management Company D, Management Company E, Benjamin Osiashvili a.k.a Veniamin Osiashvili, Mikael Osiashvili a.k.a Michael Osiashvili, Svetlana Osiashvili, Aleksey Vayner a.k.a Alex Vayner, Eitan Dagan, Manager Defendant A, Manager Defendant B, Manager Defendant C, Manager Defendant D, Manager Defendant E, Tatiana Sharahy, MD, Mitchell Ehrlich, MD, Joseph C. Cole, MD, Julio Westerband, MD, William A. Ross, MD, Renat R. Sukhov, MD, William S. Kritzberg, MD, Robert A. Sohn, DC, Stanley Ross, MD, Mitchell L. Weisman, MD, Mark Weber, MD, Gary J. Florio, MD, Antonio Martins, MD, Damion A. Martins, MD, M.S., Dante Brittis, MD, Christopher Ferrante, DC, Brian Freindlich, DC, Wayne Kerness, MD, Denis Mann, DC, Andrew Miller, MD, Andrew Bazos, MD, Drew Stein, MD, Linda Ackerman and Evgeniya Vakidova. Plaintiff seeks monetary damages based upon the following causes of action: (1) declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, declaring that all peer reviews and all IME reports issued by the Defendants are null and void; (2) mail fraud under the Federal Racketeering Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §1962(c); (3) mail fraud under the RICO Act, 18 U.S.C. §1962 (d) against the Nationwide Defendants; (4) mail fraud under the RICO Act, 18 U.S.C. §1962 (c) against the GW Defendants; (5) mail fraud under the RICO Act, 18 U.S.C. §1962 (c) against the GW Defendants; (6) mail fraud under the RICO Act, 18 U.S.C. §1962 (d) against the Nationwide Defendants; (7) mail fraud under the RICO Act, 18 U.S.C. §1962 (d) against the Nationwide Defendants; (8) mail fraud under the RICO Act, 18

U.S.C. §1962 (d) against the GW Defendants; (9) mail fraud under the RICO Act, 18 U.S.C. §1962 (d) against the GW Defendants; (10) common law fraud; (11) aiding and abetting fraud against the GW Defendants; (12) unjust enrichment; and (13) tortious interference. *See generally* Second Amended Complaint ("SAC") [DE 294].

Presently before the Court are two motions seeking to quash subpoenas served upon non-parties to this lawsuit. The first is Plaintiff's motion to quash the subpoena *duces tecum* served upon non-party Government Employees Insurance Company ("GEICO") by the GW Defendants[1] to the extent the subpoena seeks disclosure of a Settlement Agreement entered into between Plaintiff and non-party GEICO in an unrelated action. *See DE 459.* The GW Defendants and the Nationwide Defendants[2] (collectively, the "Defendants") oppose the motion. *See DE 461, 462.* The second motion involves Defendants and non-parties BDB Management NY Inc. ("BDB") and TCMR Management, Inc.'s ("TCMR") (collectively, the "Non-Party Objectors") and seeks to quash four subpoenas *duces tecum* served upon non-party JP Morgan Chase Bank ("Chase") since, according to both Defendants and the Non-Party Objectors, the subpoenas "seek private financial records of the Defendants that are irrelevant to Plaintiff's damage claims." DE 478.

For the reasons that follow, Plaintiff's motion is DENIED and Defendants' motion is GRANTED, in part, and DENIED, in part.

---

[1] The GW Defendants consist of SCS Support Claim Services, Dante Brittis, M.D., Joseph C. Cole, M.D., Eitan Dagan, Mitchell Erlich, M.D., Christopher Ferrante, D.C., William S. Krtizberg, M.D., Denis Mann, M.D., Robert A. Sohn, M.D., Renat R. Sukhov, M.D., Mark Weber, M.D., Mitchell L. Weisman, M.D. and Julio Westerband, M.D. *See* DE 461-1.

[2] The Nationwide Defendants consist of Nationwide Management Inc., Benjamin Osiashvili, Mikael Osiashvili, Svetlana Osiashvili and Alex Vayner. *See* DE 462.

II.   <u>R<span style="font-variant:small-caps">ELEVANT</span> B<span style="font-variant:small-caps">ACKGROUND</span></u>

On February 8, 2016, the GW Defendants served upon non-party GEICO an Amended Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "GEICO Subpoena"). *See* DE 459-1 (GEICO Subpoena). As is relevant to the disposition of the instant motion, the GEICO Subpoena sought a "copy of the settlement agreement between GEICO and Sky Medical that resolve[d] the lawsuit commenced by the GEICO Complaint."[3] *Id.*, Amended Appendix A. Thereafter, on March 28, 2016, Plaintiff filed a letter motion seeking to quash the GEICO Subpoena to the extent that it sought production of the "confidential settlement agreement between plaintiff, its owner Edi Kalontarov, and GEICO" in an unrelated action. DE 459. Both the GW Defendants and the Nationwide Defendants filed opposition on April 15, 2016. DE 461, 462. After conducting an initial review of the motion papers, the Court issued an Order on May 5, 2016, expressing "concerns regarding what relevance, if any, the Settlement Agreement has with respect to Defendant's ability to defend itself against Plaintiff's claims contained in the Second Amended Complaint." DE 467. Therefore, "prior to making a final ruling on Plaintiff's motion to quash" the Court directed that "Plaintiff provide a hard copy of the Settlement Agreement . . . within 14 days of the date of this Order to enable the Court to conduct an *in camera* review as to the overall relevance of the document." *Id.* In addition, the Court indicated that it had not yet rendered a threshold determination as to whether Plaintiff possessed the requisite standing to contest the subpoena in the first instance. *Id.* On May 19, 2017, Plaintiff provided a copy of the Settlement Agreement to the Court to facilitate its adjudication of the motion.

---

[3]     The "Geico Complaint" is defined as "the Complaint filed by GEICO against Sky Medical, et al in the United States District Court for the Eastern District of New York on or about December 5, 2013 under case number 1:13-cv-06840-WFK-JMA." *Id.*, Amended Appendix A.

With respect to Defendants' motion to quash [DE 478], Plaintiff executed the four subpoenas[4] at issue (the "Chase Subpoenas") on April 13, 2016 and April 21, 2016.[5] DE 478, Exs. D, E, F. All four subpoenas seek the same six categories of financial information for accounts held by Defendants and the Non-Party Objectors which are presumably within the custody and control of Chase. *Id*. On May 20, 2016, Defendants filed a letter motion, in which the Non-Party Objectors joined, seeking to quash the Chase Subpoenas based upon the fact that the information sought encompassed "private financial records of the Defendants that are irrelevant to Plaintiff's damages claims." DE 478. On May 23, 2016, Plaintiff filed a response in which it opposed the motion. DE 483.

## III. APPLICABLE LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure governs the procedure when an individual or entity seeks to quash or modify a subpoena. Specifically, Rule 45(d) provides, in pertinent part, that

> (A) *When Required*. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

---

[4] Although Defendants assert they are seeking to quash three subpoenas, they have included four such subpoenas as exhibits to their motion. *See* DE 478, Exs. D, E, F (two subpoenas). As such, the Court will treat the motion as seeking to quash all four.

[5] Plaintiff has not included any information indicating that these four subpoenas were duly served upon JP Morgan and Defendants have not addressed this issue in their motion papers. Likewise, JP Morgan has not interposed a separate motion on its own behalf seeking to quash the subpoenas based upon insufficient service (or any other grounds for that matter). As such, for purposes of deciding the instant motion, the Court assumes, without deciding, that service was properly effected on JP Morgan.

(iv) subjects a person to undue burden.

(B) *When Permitted*. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

Fed. R. Civ. P. 45(d)(3)(A), (B).

"A determination to grant or deny . . . a motion to quash a subpoena is discretionary." *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012); *see In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 68 (2d Cir. 2003); *Solomon v. Nassau Cnty.*, 274 F.R.D. 455, 460 (E.D.N.Y. 2011) ("Motions to quash subpoenas under the Rules are 'entrusted to the sound discretion of the district court.'") (quoting *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003)); *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011) ("The decision whether to quash or modify a subpoena is committed to the sound direction of the trial court.") (citations omitted).

"The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd.*, 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003); *see also Salvatorie Studios, Int'l v. Mako's Inc.*, 01 Civ. 4430, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001). Relevance in this context is subject to the over-arching relevance requirement outlined in Rule 26(b)(1). *See In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) ("Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)"); *see Ford Motor Credit Co. v. Meehan*, No. CV 05-4807, 2008 WL 2746373, at *4

(E.D.N.Y. July 11, 2008); *During v. City Univ. of New York*, No. 05 Civ. 6992, 2006 WL 2192843, at *82 (S.D.N.Y. Aug. 1, 2006).

Rule 26(b)(1), as amended on December 1, 2015, recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley v. Choice Hotels Int'l*, No. CV 14-634, 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015) (recognizing that "the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant 'to any party's claim or defense,' also 'proportional to the needs of the case.'") (internal citation omitted). Notably, although Rule 26 still permits a wide range of discovery based upon relevance and proportionality, the "provision authorizing the court . . . to order discovery of any matter relevant to the subject matter involved in the action" has been eliminated. Rule 26 Advisory Committee Notes to 2015 Amendments; *see Sibley*, 2015 WL 9413101, at *2 (internal citation omitted). The rationale behind the elimination of this phrase is the reality that it "has been used by some, incorrectly, to define the scope of discovery." Rule 26 Advisory Committee Notes to 2015 Amendments. Thus, Rule 26(b)(1), as amended, although not fundamentally different in scope from the previous version "constitute[s] a reemphasis on the importance of proportionality in discovery but not a substantive change in the law." *Vaigasi v. Solow Mgmt. Corp.*, No. 11 CIV 5088, 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016); *see Robertson v. People Magazine*, No. 14 Civ. 6759, 2015 WL 9077111 at *2 (S.D.N.Y. Dec. 16, 2015) ("[T]he 2015 amendment [to Rule 26] does not create a new standard; rather it serves to exhort judges to exercise their preexisting control over discovery more exact-ingly."). "Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-

broad, duplicative, or unduly burdensome." *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008); *see John Wiley & Sons, Inc.*, 284 F.R.D. at 189 (burden on motion to quash is borne by the moving party); *Ford Motor Credit Co.*, 2008 WL 2746373, at *5 ("The burden of persuasion in a motion to quash a subpoena . . . is borne by the movant.") (citing *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007)). In addition, where the party moving to quash is a non-party to the pending litigation, that fact "entitles the witness to consideration regarding expense and inconvenience." *Night Hawk Ltd.*, 2003 WL 23018833, at *8 (internal quotations and citation omitted); *see Cohen v. City of New York*, No. 05 Civ. 6780, 2010 WL 1837782, at *3 (S.D.N.Y. May 6, 2010) (recognizing that "special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation"); *Corbett v. eHome Credit Corp.*, No. 10-CV-26, 2010 WL 3023870, at *3 (E.D.N.Y. Aug. 2, 2010); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996).

## IV. PLAINTIFF'S MOTION TO QUASH THE GEICO SUBPOENA

### A. DISCUSSION

#### 1. The Parties' Contentions

Plaintiff seeks to quash the GEICO Subpoena solely to the extent it seeks production of the Settlement Agreement entered into between itself and GEICO in the unrelated action of *GEICO v. Sky Medical Supply, Inc., et al.*, 1:13-cv-06840-WFK-JMA. DE 459 at 1. Initially, Plaintiff argues that it possesses the necessary standing to interpose the instant motion, notwithstanding the fact that it is not the target of the GEICO Subpoena. DE 459 at 2. Specifically, Plaintiff asserts that although in general "only the recipient of a subpoena has standing to object, such [a] presumption does not apply when the objecting party is seeking to

protect a personal privilege or right, including rights of confidentiality." *Id*. Proceeding on this

premise, Plaintiff tacitly urges that this limited exception be applied here based upon the "'strong

public policy favoring settlements and the congressional intent to insulate the bargaining table

from unnecessary intrusions.'" *Id*. (quoting *Bottaro v. Hatton Associates*, 96 F.R.D. 158, 160

(E.D.N.Y. 1982)). In addition, Plaintiff maintains that "[c]ourts in this Circuit [ ] recognize that

settlement agreements" should be treated in a similar fashion to "confidential financial or

employment information." *Id*. Therefore, Plaintiff concludes it has standing to "quash the

instant subpoena insofar as it seeks a confidential settlement agreement to which [it] was a

party."[6]

Proceeding from the standpoint that it has standing to quash the GEICO Subpoena,

Plaintiff next argues that "Defendants are unable to articulate that any relevant admissible

information will be generated by the production of the entire settlement agreement." *Id*.

Specifically, Plaintiff maintains that the Settlement Agreement is irrelevant to the instant case

since "[t]he GEICO Matter revolved around claims GEICO had voluntarily paid Sky or for

which payment was pending [whereas] [t]he instant suit involves claims that went to trial or

arbitration and were not, in any event, paid voluntarily. *Id*. at 3. Accordingly, Plaintiff states

that the GW Defendants' attempt to obtain the Settlement Agreement here amounts to a "blatant

fishing expedition that should not be countenanced by the Court." *Id*.

In opposition, the GW Defendants contend that Plaintiff does not possess the necessary

standing to quash the GEICO Subpoena. DE 461. Specifically, the GW Defendants argue that

---

[6]      Plaintiff brings the instant motion on behalf of both itself and non-party Edi Kalontarov ("Kalontarov"), as owner of Sky Medical. However, Plaintiff cites no case law supporting the proposition that Kalontarov has standing to independently bring the instant motion since he is both (1) a non-party to this lawsuit and (2) not the target of the subpoena. In light of the fact that Plaintiff has not briefed the issue as to whether Kalontarov's non-party status nevertheless imbues him with the requisite standing, the Court declines to consider the motion as it relates to Kalontarov.

notwithstanding Plaintiff's recitation of the general rule that only "'the recipient of a non-party subpoena has standing to object,'" Plaintiff nevertheless arrives at the misbegotten conclusion that it "has standing due to public policy concerns against discovery of settlement negotiations" since, according to Plaintiff, "settlement agreements are akin to 'confidential financial or employment information' in which the objecting party has 'some personal privilege or right.'" *Id*. at 1.  However, the GW Defendants assert that contrary to Plaintiff's position "court decisions . . . make clear that settlement agreements are themselves discoverable" and therefore "Plaintiff cannot argue that settlement agreements contain a *de facto* 'personal right' or 'privilege' belonging to the settling parties." *Id*. at 1-2.  In addition, the GW Defendants argue that "Plaintiff offers absolutely no factual basis to suggest that the Settlement Agreement contains the type of privileged information (like personal financial information) that would provide Plaintiff with standing to object to the non-party subpoena" and "simply branding a settlement agreement as 'confidential' is not enough to satisfy the narrow exception to the general rule that a party does not have standing to quash a non-party subpoena." *Id*. at 2.

Turning to the relevance of the information contained in the Settlement Agreement, the GW Defendants argue that "settlement agreements are routinely deemed relevant to show knowledge of fraudulent activities by the objecting party, as that knowledge relates to claims asserted in a subsequent lawsuit." *Id*. at 3.  Thus, in light of the claims here, alleging that the "GW Defendants participated in a 'fraudulent scheme' to deprive Plaintiff of reimbursement on its no-fault claims," the GW Defendants proffer that the Settlement Agreement is relevant to its defense to the extent it may "establish[ ] a fraudulent scheme by Plaintiff (or contain[ ], an admission of such a scheme or any admission of fact) since such facts would support the GW

Defendants' position that "they cannot be liable to Plaintiff when Plaintiff was never entitled to reimbursement in the first place due to fraud on its part with respect to processing of claims." *Id.*

### 2. Whether Plaintiff Possesses the Requisite Standing to Challenge the Subpoena

"Ordinarily, a party lacks standing to challenge a subpoena served on a non-party unless the party asserts or establishes a personal right or privilege with regard to the subpoenaed information." *Allstate Ins. Co. v. A & F Med. P.C.*, No. 14-CV-6756, 2016 WL 7116067, at *2 (E.D.N.Y. Dec. 6, 2016); *see Estate of Ungar v. Palestinian Auth.*, 332 Fed. App'x 643, 645 (2d Cir. 2009) (collecting authorities); *A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co.*, No. 3:07CV929, 2013 WL 6511934, at *2 (D. Conn. Dec. 12, 2013); *Harris v. Jamaica Auto Repair Inc.*, No. 03-CV-417, 2009 WL 2242355, at *2 (E.D.N.Y. July 27, 2009); *see also Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) ("A party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden."); *Estate of Ungar v. Palestinian Auth.,* 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005); *US Bank Nat'l Ass'n. v. PHL Variable Ins. Co.*, 12 Civ. 6811, 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) (citing cases). "Examples of such personal rights or privileges include the personal privacy right and privilege with respect to the information contained in [ ] psychiatric and mental health records, claims of attorney-client privilege, and other privacy interests, including those relating to salary information and personnel records." *A & R Body Specialty & Collision Works, Inc.*, 2013 WL 6511934, at *2. *See Lev v. S. Nassau Communities Hosp.*, No. CV 10-5435, 2011 WL 3652282, at *1 (E.D.N.Y. Aug. 18, 2011) ("[T]he plaintiff has a privacy interest with respect to information contained in her employment records, and thus, can challenge the subpoenas [directed at a non-party]."); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) ("Plaintiff has a legitimate privacy

interest in information regarding his subsequent employment and therefore has standing to bring the instant motion [to quash subpoena served upon non-party employers].”); *Roth v. Cty. of Nassau*, No. 15CV6358, 2017 WL 75753, at *2 (E.D.N.Y. Jan. 6, 2017) (same); *Copantitla v. Fiskardo Estiatorio, Inc.*, No. 09 CIV. 1608, 2010 WL 1327921, at *8 (S.D.N.Y. Apr. 5, 2010) (finding defendants had standing to object to non-party subpoenas which sought “personal information about the individual defendants, including their business, financial, and employment relationship with other members of the Makris family and the Fantis Companies.”).

Nevertheless, “a party’s general desire to thwart disclosure of information by a non-party is [ ] not an interest sufficient to create standing.” *US Bank Nat’l Ass’n.*, 2012 WL 5395249, at *2. Thus, “[i]n order for a party to have standing to challenge a subpoena served on a non-party, there must be more than a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive.” *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 CIV. 1654, 2014 WL 5420225, at *4 (S.D.N.Y. Oct. 24, 2014) (internal citation omitted); *see Universitas Educ., LLC*, 2013 WL 57892, at *5 (denying defendants’ motion to quash subpoena served on non-party where it “made no attempt to establish any proprietary or other confidentiality-related interest it may have in the requested documents beyond a conclusory assertion that the subpoenas seek documents that are ‘private, confidential, and commercially sensitive.’” This bald statement, by itself, is insufficient to confer [defendant] with standing . . . .”).

As an initial matter, the Court points out that neither party has submitted a decision addressing the precise set of facts at issue here (*i.e.*, whether a party has standing to challenge a non-party subpoena which seeks disclosure of a settlement agreement in an unrelated action in which the party in the instant litigation was also a part and signatory to that earlier settlement

agreement).  In its own view, Sky Medical it possesses the requisite standing, analogizing the settlement agreement to other cases involving personal financial records or confidential employment records — information which courts have found sufficient to imbue a party with standing to challenge a non-party subpoena.  *See Roth*, 2017 WL 75753, at *2 (employment records); *Copantitla*, 2010 WL 1327921, at *8 (financial and business records).  However, other than using this analogy, Plaintiff has not provided the Court with any *facts* that would tend to show exactly how the settlement agreement at issue is akin to confidential financial or employment records.  Essentially, Plaintiff's argument, as written, proceeds along a faulty line of reasoning that a settlement agreement should always be treated in the same manner as confidential financial or employment records, notwithstanding its contents.  Taking such reasoning to its logical conclusion however would lead to an illogical result, namely, that a party would almost always have standing to quash a subpoena directed to a non-party to the extent a subpoena seeks disclosure of a settlement agreement.[7]  In essence, the exception would swallow the rule.  Further, Plaintiff's position is at odds with the notion that "[c]ourts should consider 'whether the information itself is private, confidential, privileged, or highly sensitive, and not the form the records take.'"  *Refco Grp. Ltd., LLC*, 2014 WL 5420225, at *4 (quoting *Solow v. Conseco, Inc.*, 06 Civ. 5988, 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008)).

---

[7]     The Court also takes note of Fed. R. Evid. 408 in this context.  This Rule was promulgated to promote "the settlement of disputes outside the judicial process."  *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 210-11 (D.D.C. 2005) *aff'd in part on other grounds sub nom. In re Subpoena Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740 (D.C. Cir. 2006) (citing *In re Pub. Offering Sec. Litig.*, No. 21 MC 92, 2004 WL 60290, at *4 (S.D.N.Y. Jan. 12, 2004)).  Notwithstanding the settling parties' desire to keep settlement negotiations and terms confidential, however, "it is equally plain that Congress chose to promote this goal through limits on the *admissibility* of settlement material rather than limits on their *discoverability*."  *Id.* at 210-11.

After reviewing the Settlement Agreement *in camera*, the Court is not convinced that it contains the type of information contemplated by the exception to the general rule which provides that "a party lacks standing to challenge a subpoena served on a non-party unless the party asserts or establishes a personal right or privilege with regard to the subpoenaed information." *Allstate Ins. Co.*, 2016 WL 7116067, at *2. Plaintiff has not done so here. Specifically, the Settlement Agreement does not contain any sensitive financial, employment or business information which would implicate the type of personal privacy right that the exception was meant to protect. In fact, the agreement does not contain any specific financial information atl — nor any medical or psychiatric information, salary or personnel records. Rather, the information contained in the Settlement Agreement primarily involves general releases issued in favor of both Plaintiff and GEICO which served to settle the prior lawsuit between these entities. Moreover, the Settlement Agreement itself contemplated that it could be subject to disclosure pursuant to the issuance of a valid subpoena. *See* Settlement Agreement, ¶ 9. As stated previously, other than making sweeping assertions that the Settlement Agreement is analogous to financial or employment records, Plaintiff has not identified what specific portions of the Settlement Agreement implicate the type of personal privacy or privilege concerns akin to those that exist when a subpoena seeks confidential business, financial or employment records. *See Refco Grp. Ltd., LLC*, 2014 WL 5420225, at *4 ("In order for a party to have standing to challenge a subpoena served on a non-party, there must be more than a conclusory assertion that the subpoenas seek documents that are private, confidential, and commercially sensitive."); *A & R Body Specialty & Collision Works, Inc.*, 2013 WL 6511934, at *2 (finding defendant lacked standing to quash non-party subpoenas where it "fail[ed] to articulate any personal rights or privileges to the information sought in the subpoenas" and where "[t]he Court's review of [the]

subpoenas also fail[ed] to reveal that any recognized personal rights or privileges may be implicated by the production sought.").  Thus, while Plaintiff may wish to preclude the disclosure of the Settlement Agreement on these grounds, its "general desire to thwart disclosure of information by a non-party is [ ] not an interest sufficient to create standing."  *US Bank Nat'l Ass'n.*, 2012 WL 5395249, at *2.  In addition, Plaintiff has failed to cite any case law supporting its assertion that courts in this Circuit treat settlement agreements like confidential financial or employment information.  DE 459 at 2.  Without providing binding or persuasive authority for this proposition, the Court will not consider such argument in the first instance.  Further, to the extent the parties to the Settlement Agreement may have agreed to keep it confidential, that fact, in itself, does not operate as a bar to discovery.  *See Conopco, Inc. v. Wein*, No. 05 CIV. 9899, 2007 WL 1040676, at *6 (S.D.N.Y. Apr. 4, 2007) (recognizing that "the simple fact that the parties to the settlement agreement agreed to its confidentiality does not shield it from discovery").

    In light of the foregoing analysis, the Court concludes that Plaintiff lacks the requisite standing to challenge the GEICO Subpoena.  The motion to quash is therefore DENIED.  In light of this determination, the Court finds it unnecessary to address the merits of Plaintiff's claims.  *See Meyer Corp. U.S. v. Alfay Designs, Inc.*, No. Civ. 2010 3647, 2012 WL 3537001, at *2 (E.D.N.Y. Aug. 14, 2012) ("Because defendants lack standing to bring their motion to quash, this Court does not address the merits of their arguments.").  However, the Court also finds, after having reviewed the agreement *in camera*, that the contents of the agreement are of questionable relevance.  Therefore, GEICO shall make the Settlement Agreement available to the parties for inspection only within 14 days of the entry of this Order.

## V.   DEFENDANTS' MOTION TO QUASH THE CHASE SUBPOENAS

### A.  *Discussion*

#### 1.  The Parties' Contentions

Defendants initially maintain that they have standing to bring the instant motion due to the 'private' and 'confidential' nature of the [financial] documents sought." DE 478 at 1. Specifically, Defendants state that "litigants maintain a privacy interest in their financial documents, affording standing to quash subpoenas issued to non-parties that seek production of confidential banking records." *Id*. Here, the "non-party subpoenas seek documents and information from SCS's chief operating account and payroll account, including but not limited to records of ATM and debit card users, all cancelled checks, payment and deposit records, as well as similar private banking records of Nationwide, BDB, and TCMR" and therefore "Defendants have standing to submit this motion." *Id*.

Turning to the merits, Defendants claim that the "subpoenas issued by Plaintiff here amount to 'an impermissible fishing expedition'" since "the sweeping requests, which seek virtually every financial transaction for a ten year period stemming from Defendants' private banking records, have no connection to the claims at issue in the Second Amended Complaint." *Id*. at 2. In addition, Defendants maintain that the Chase Subpoenas "fail to limit the scope of documents sought to the 177 claim denials listed in Exhibit 7 to Plaintiff's Second Amended Complaint" which, according to the Defendants, leads to the conclusion that Plaintiff has not made "any attempt to relate those records to the claim denials that make up Plaintiff's damage claims." *Id*. As such, Defendants argue that the "subpoenas clearly do not relate to the 177 claim denials . . . fall outside of the discovery parameters set by the Court, and bear no relevance to Plaintiff's damage claims." *Id*. at 3. Further, Defendants state that "SCS's banking records

will not reveal payments made to a majority of the GW physician defendants since payments for their services (creation of peer review reports) were made not by SCS, but rather, by an independent vendor; Defendant Patient Focus (who referred the physicians to SCS)." *Id.*

In opposition, Plaintiff states that the allegations contained in the SAC, which "concern [ ] fraud in New York's no-fault insurance industry, are the type for which the Second Circuit courts routinely order production of bank records and tax returns." DE 483 at 2 (citing cases). In addition, according to Plaintiff, "the conduct that resulted in [its] injuries cannot be detached from Defendants' interlocking financial arrangement, as such arrangement was part and parcel of [the] fraudulent scheme." *Id.* Further, Plaintiff contends that

> The level of control that Manager Defendants had was such that the checks issued by SCS to Doctor Defendants for the "work" performed were deposited by Patient Focus into *Patient Focus'* own bank accounts, not Doctor Defendants' accounts. Patient Focus would then issue substantially smaller checks to Doctor Defendants. The lion's share would be filtered to Nationwide, BAB, BDB and TCMR. Patient Focus would also issue checks back to SCS, and make substantial payments to Integrated Document Solutions (IDS), a Florida based company owned by Eitan Dagan's brother, Yaniv Dagan.

*Id.* at 3 (emphasis in original). Turning to the scope of the Chase Subpoenas themselves, Plaintiff argues that despite Defendants' characterization that "'discovery in this Action is to be limited to the 177 claim denials listed on Exhibit 7,'" the "Court has never issued an Order limiting discovery to the 177 claims in the Damages Spreadsheet." *Id.*[8]

---

[8]     Since this motion was filed, the Court issued a Memorandum and Order resolving a number of pending discovery motions. *See* DE 503. As part of its decision, the Court clarified the permissible scope of discovery in light of the surviving 177 claims contained in the Damages Spreadsheet. *Id.* at 21, 27, 29, 32. Further, notwithstanding the scope of discovery as set forth in DE 503, Plaintiff nevertheless asserted that there still existed an ambiguity as to the overall scope of discovery and sought further clarification. *See* DE 520. Thereafter, the Court issued an Order confirming the language used in DE 503. Specifically, the Court stated that "the scope of discovery . . . shall be limited expressly to the 177 insurance claims at issue in this action

### 2. Whether Defendants Possess the Requisite Standing to Challenge the Subpoenas

At the outset, the Court points out that it has set forth above the legal principles which guide this inquiry and need not repeat them here. *See* Section IV.A.2 *supra*. Further, Plaintiff has not addressed the matter of Defendants' standing in its opposition papers. As such, the Court construes Plaintiff's silence as a lack of objection to the motion on that basis. Nevertheless, as a threshold issue, the Court is obligated to briefly address this matter before analyzing the merits of Defendants' motion. *See Warth v. Seldin*, 422 U.S. 490, 517-18, 95 S. Ct. 2197, 2215, 45 L. Ed. 2d 343 (1975) ("The rules of standing, whether as aspects of the Art. III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 517-18, 95 S. Ct. 2197, 2215, 45 L. Ed. 2d 343 (1975); *Pettus v. Morgenthau*, 554 F.3d 293, 298 (2d Cir. 2009) ("[S]tanding . . . is intended to be a threshold issue at least tentatively decided at the outset of the litigation."); *Licensing by Paolo, Inc. v. Sinatra* (*In re Gucci*), 126 F.3d 380, 387–88 (2d Cir. 1997).

The Chase Subpoenas seek six discrete categories of bank records: (1) bank statements; (2) copies of canceled checks; (3) deposit tickets; (4) retained copies of items deposited; (5) records of payments made on the account(s) and deposits made to the account(s); and (6) all records and documents pertaining to issuance of debit and ATM cards connected to the referenced accounts. *See* DE 478, Exs. D, E, F. Although the Court has not been presented with a sampling of the records at issue to review *in camera*, in general, a litigant will be able to

---

utilizing the three-year period solely as a framework in light of the fact that "[t]he vast majority of the 177 claims at issue span a time period of approximately three years (January 2007 through January 2010) as measured from the earliest (November 3, 2006) and latest (January 18, 2010) Dates of Service enumerated in the Damages Spreadsheet." DE 523. Plaintiff's argument in this regard is therefore moot in light of the Court's previous rulings.

establish the necessary standing to challenge a subpoena issued to a non-party where the litigant is able to assert "a personal right or privilege with regard to the subpoenaed information." *Allstate Ins. Co. v. A & F Med. P.C.*, No. 14-CV-6756, 2016 WL 7116067, at *2 (E.D.N.Y. Dec. 6, 2016); *See Estate of Ungar v. Palestinian Auth.*, 332 Fed. App'x 643, 645 (2d Cir. 2009) (collecting authorities). In this Circuit, courts are generally in agreement that financial records (including banking records) fall within the scope of information to which a party enjoys a personal right or privilege. *See, e.g.*, *Copantitla*, 2010 WL 1327921, at *8 (finding defendants had standing to object to non-party subpoenas which sought "personal information about the individual defendants, including their business, financial, and employment relationship with other members of the Makris family and the Fantis Companies."); *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166, 2006 WL 2882580, at *13 (E.D.N.Y. Oct. 6, 2006) (finding non-party had standing to challenge third-party subpoena seeking mortgage documents which the court analogized with financial records); *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 93 (S.D.N.Y. 2002) (standing where subpoenaed information encompassed bank records); *Pkfinans Int'l Corp. v. IBJ Schroder Leasing Corp.*, Nos. 93 Civ. 5375, 96 Civ. 1816, 1996 WL 525862, at *2 n. 3 (S.D.N.Y. Sept.17, 1996) (finding that defendant had a shared privilege interest with its parent company and bank, and therefore had standing to contest the discovery); *Sierra Rutile Limited v. Katz*, No. 990 Civ. 4913, 1994 WL 185751, at *2 (S.D.N.Y. May 11, 1994); *Trump v. Hyatt Corp.*, No. 93 Civ. 5242, 1994 WL 168021, at *1 (S.D.N.Y. Apr. 29, 1994); *Carey v. Berisford Metals Corp.*, No. 90 civ. 1045, 1991 WL 44843, at *8 (S.D.N.Y. Mar.28, 1991) (finding that plaintiff had a privacy interest in his bank records sufficient to give him standing to contest discovery); *see also Orly Indus., Inc. v. Rite Aid Hdqtrs. Corp.*, No. 12-CV-855, 2014 WL 2612064, at *2 (E.D.N.Y. June 11, 2014) ("[A] party may have 'a sufficient

privacy interest in the confidentiality of records pertaining to their personal financial affairs so as to give them standing to challenge the subpoenas.'") (quoting *Zagroba v. York Restoration Corp.*, No. 10 CV 2663, 2011 WL 2133837, at *1 (E.D.N.Y. May 26, 2011)). Since the Chase Subpoenas clearly seek discrete categories of banking records belonging to Defendants and Non-Party Objectors, Defendants have met their burden to establish that they have standing to challenge those Subpoenas.

### 3. Relevance

Having determined that Defendants possess the necessary standing to assert their motion, the Court turns its attention to whether Plaintiff has demonstrated the relevance of the information being sought by the Chase Subpoenas. *See Night Hawk Ltd.*, 2003 WL 23018833, at *8 ("The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings."); *see also Salvatorie Studios, Int'l*, 2001 WL 913945, at *1. Relevance in this context is subject to the over-arching requirement set forth in Rule 26(b)(1). *See In re Refco Sec. Litig.*, 759 F. Supp. 2d at 345. Essentially, the subpoenaed information must be both relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Sibley*, 2015 WL 9413101, at *2. Once the requesting party has made a *prima facie* showing of relevance, *In re Weatherford Int'l Sec. Litig.*, 2013 WL 2355451, at *3; *Barbara*, 2013 WL 1952308, at *2, "it is up to the responding party to justify curtailing discovery." *Fireman's Fund Insurance Co. v. Great American Insurance Co. of New York*, 284 F.R.D. 132, 134 (S.D.N.Y. 2012). However, "conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Melendez v. Greiner*, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003); *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011) (same); *Diaz v. Local 338*

*of Retail, Wholesale Dep't Store Union, United Food & Commercial Workers*, No. 13-CV-7187, 2014 WL 4384712, at *2 (E.D.N.Y. Sept. 3, 2014) (same). "A party resisting discovery has the burden of showing 'specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each [discovery request or] interrogatory is not relevant or how each question is overly broad, burdensome or oppressive . . . submitting affidavits or offering evidence revealing the nature of the burden.'" *Vidal v. Metro–North Commuter Railroad Co.*, No. 3:12CV248, 2013 WL 1310504, at *1 (D. Conn. March 28, 2013) (alteration in original) (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)); *In re Weatherford Int'l Sec. Litig.*, 2013 WL 2355451, at *4; *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014); *Diaz*, 2014 WL 4384712, at *2.

The SAC alleges that SCS Support Claim Services, Inc., ("SCS") "is a medical consultant 'vendor' company that has been contracted by various insurer clients to find independent medical consultants who perform ostensibly independent peer reviews and medical examinations in order to determine whether certain medical services covered by insurance policies should be paid or denied as not medically necessary." SAC ¶¶ 5, 12. SCS is managed and controlled by Defendant Eitan Dagan. *Id*. ¶¶ 12, 21, 79. Prior to the period of the alleged fraudulent scheme, SCS "provided peer review services for certain insurers, but produced them on a scale that was a mere fraction of what would occur once the partnership with Patient Focus was formed." *Id.* ¶ 79 (emphasis omitted).[9]

---

[9]    According to the SAC, "Patient Focus is a New York professional corporation that performs back office services for no-fault peer review and IME vendors located in New York. Patient Focus was incorporated in 2004. Its clients include, but are not limited to, no-fault medical consulting companies such as Empire Stat LLC and Medial Referral Inc. Patient Focus also provides IME services to insurance carriers in New York's workers' compensation industry. Patient Focus has always been, and still is, a fraudulently incorporated entity. It is owned on paper

During the pendency of the alleged scheme, the "Manager Defendants[10] . . . entered into a partnership that allowed for the mass production of peer review and IME reports pursuant to a fraudulent protocol." *Id.* ¶ 81. Specifically,

> Manager Defendants utilize[d] SCS to serve as the "legitimate" vendor company that enters contracts with insurance carriers to provide the carriers with peer review and IME consultant services. Pursuant to these contracts, Manager Defendants are able to obtain a vast number of requests for peer reviews and IMEs from the carriers. As an offered service, SCS agrees to provide personnel who travel to the insurers' places of business and perform the resource-heavy task of scanning into digital format the medical records of the various injured parties and electronically transmitting them in order for the reports to be created. SCS also agrees under the contract to find the medical consultants who are supposed to conduct the peer reviews and IMEs, and to provide the office space where the IMEs take place. All of the peer review and IME reports in question appear on SCS letterhead. Manager Defendants also ensure that scheduling letters sent to injured parties informing them of IME appointments are on SCS letterhead.

*Id.* Further, the scheme also relied on the participation of

> Doctor Defendants [who] authorize[d] Manager Defendants to create a massive amount of peer review and IME reports bearing their respective names. Doctor Defendants have a symbiotic relationship with Manager Defendants. Doctor Defendants are essential to the fraudulent scheme in that Manager Defendants would not be able engage in the peer review and IME business unless the reports submitted to the insurance carrier clients

by Sharahy but truly is owned and controlled by (1) B. Osiashvili, S. Osiashvili and M. Osiashvili through their management company Nationwide; and by (2) Alex Vayner through his management company BAB; and by (3) the remaining above-captioned Manager Defendants through their management companies. In a classic 'doc-in-the-box' setup, and in order to create a seemingly valid corporate entity, Patient Focus and Sharahy entered into a relationship wherein Sharahy sold her license to the Osiashvili Defendants and Vayner in order for them to establish a medical professional corporation and divert sums of money to laypersons that they are not legally entitled to receive [these funds]. Most of the profit obtained by Patient Focus is filtered to [the] Manager Defendants through their respective management companies." *Id.* ¶ 80.

[10] The "Manager Defendants" include Eitan Dagan, Svetlana Osiashvili, Benjamin Osiashvili, Mikael Osiashvili, Alex Vayner and Manager Defendants A through E. *See* SAC ¶¶ 21-30.

contained the name and purported signatures of licensed health care practitioners. Moreover, a significant portion of the organization's revenue is derived from expert witness fees paid to SCS for Doctor Defendants' court appearances in support of the fraudulent reports. These fees would not be attainable without licensed doctors actually appearing in court or at arbitration to testify. Insofar as economic benefits to Doctor Defendants are concerned, absent the involvement with Patient Focus and SCS, "valid" peer review and IME reports could not be generated at a volume, speed and cost comparable to what could be accomplished once the fraudulent scheme was up and running. By allowing SCS and Patient Focus to create and sign the reports, Doctor Defendants are able to obtain payment as the purported authors of an exponentially larger number of reports than if they were actually doing legitimate peer reviews and IMEs. Moreover, Doctor Defendants agreed with SCS and Patient Focus that the peer review reports and IME reports would, without regard to the facts or merits of each claim, contain predetermined opinions that the services rendered by health care providers universally lacked medical necessity. One of the reasons for this is that the more reports that are issued triggering denial of benefits, the more court appearances would be needed for testimony by Doctor Defendants in support of the reports.

*Id.* ¶ 85 (emphasis omitted). All fees received by Patient Focus "are split between Sharahy and the Management Companies. They are split in a manner wherein Patient Focus' true owners obtain the vast majority of the profits." *Id.* ¶ 105. Specifically, Sharahy would receive a 10% share of the profits while the remaining 90% was "funneled to Management Company Defendants and their owners." *Id.* Once these fraudulent peer review reports were generated, Plaintiff asserts that both SCS and Patient Focus "caused the reports to be mailed from Florida to Georgia, New York, Virginia and Texas, among other states. Additionally, the reports were electronically transmitted from Florida to the insurance carrier clients by electronic mail. The electronic submissions originated in Florida and were received by employees of the insurance carrier clients in the aforementioned states." *Id.* ¶¶ 119, 139.

These predicate acts frame Plaintiff's RICO allegations which state, in part, that SCS and Patient Focus each constitute an ongoing enterprise within the meaning of 18 U.S.C. § 1961(4). *Id*. ¶¶ 146, 162. Specifically, according to the SAC, "Defendants knowingly and willfully have conducted and participated in the conduct of SCS's [and Patient Focus'] affairs through a pattern of racketeering activity. Said pattern includes intentionally causing to be prepared and mailed fraudulent peer review and IME reports on a continuous basis for several years [and] causing claims for reimbursement submitted by Plaintiff to be denied." *Id*. ¶¶ 147, 163. "By filing numerous fraudulent reports in an ongoing scheme . . . Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. §1962(c). *Id*. ¶¶ 153, 169. As a result, the SAC asserts, "[t]he activities alleged in this case had the direct effect of causing funds to be transferred from the insurance carrier clients of Defendants to the . . . Defendants [themselves] for their benefit, while directly resulting in economic harm to Plaintiff as a result of denial of reimbursement of payments to which Plaintiff was entitled." *Id*. ¶¶ 154, 170.

Based upon the allegations set forth in the SAC, coupled with Plaintiff's proffer, the Court finds Plaintiff has established that some of the bank records listed in the Chase Subpoenas are relevant and material to Plaintiff's RICO claims. In particular, 18 U.S.C. §1962 prohibits (a) the use of income "'derived . . . from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise engaged in or affecting interstate commerce; (b) the acquisition of any interest in or control of such an enterprise through a pattern of racketeering activity; (c) the conduct or participation in the conduct of such an enterprise's affairs through a pattern of racketeering activity; and (d) conspiring to do any of the above.'" *Conopco*, 2007 WL 2119507, at *3 (quoting *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 465 (2d Cir. 1995), *cert. denied,* 518 U.S. 1017, 116 S. Ct. 2547, 135 L. Ed. 2d 1067 (1996)). In

addition, "in order to establish a RICO claim against a defendant, the defendant must be involved in conducting or participating in the conduct of the RICO enterprise's affairs; that is, she must have some part in directing the enterprise's affairs." *Conopco, Inc.*, 2007 WL 2119507, at *3; *see Azrielli v. Cohen Law Offices,* 21 F.3d 512, 521 (2d Cir. 1994); *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996); *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 223 (E.D.N.Y. 2014). As such, the financial information sought in the Chase Subpoenas (targeted at SCS, Nationwide, BDB and TCMR) may provide some relevant evidence of: (1) participation in the conduct of the RICO enterprise through a pattern of racketeering activity; (2) the use of the income derived from the racketeering activity to operate the RICO enterprise; (3) a conspiracy in which income derived from a pattern of racketeering activity is used to operate a RICO enterprise; and (4) motivation for participation in the RICO enterprise. *See Conopco, Inc.*, 2007 WL 2119507, at *3; *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14CIV9792, 2015 WL 7871037, at *3 (S.D.N.Y. Dec. 3, 2015*), aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016) ("Case law indicates that evidence of a defendant's motive for participation in a fraudulent medical billing scheme is relevant to such claims and that financial documents like these are discoverable to establish that motive.") (citing cases); *see also Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372, 375 (W.D.N.Y. 2006) (permitting discovery of bank account information where "plaintiffs have asserted broad civil RICO claims against the [ ] defendants").

Although the financial documents sought are relevant, they must also be proportional to the needs of the case. *See Sibley*, 2015 WL 9413101, at *2. After reviewing the overall scope of the Chase Subpoenas — which seek financial documents from 2005 through 2015 — the Court finds that as written, the Chase Subpoenas are overly broad and unduly burdensome in scope,

especially given the limited nature and extent of the claims comprising the SAC. This case has been narrowed to encompass solely the 177 insurance claims set forth in the Damages Spreadsheet. *See* SAC, Ex. 7; DE 503 at 21. In addition, the total damages sought by Plaintiff are approximately $150,000. *See id*. (*ad damnum* clause). The vast majority of the 177 claims span a time period of approximately three years (January 2007 through January 2010) as measured from the earliest (November 3, 2006) and latest (January 18, 2010) Dates of Service enumerated in the Damages Spreadsheet. *See* SAC, Ex. 7. As such, the Chase Subpoenas need to be narrowly tailored to include only those bank records falling within this three-year time period encompassing the 177 claims in this action. To further enlarge this temporal period would result in an undue burden which outweighs the potential benefit here. That result would contravene the requirement that discovery be proportional to the needs of each case. *See Fayda*, 2015 WL 7871037, at *4 ("Rule 26(b)(1) instructs parties and courts to evaluate whether the benefit of the discovery sought is proportional to the burden of producing it, taking into account issues like access, importance, and available resources.").

In addition, although Defendants and Non-Party Objectors argue that the Chase Subpoenas should be quashed because the information sought is "wholly irrelevant to Plaintiff's damage claims," DE 478 at 1, that argument is unavailing. Indeed, "a court will order . . . sensitive financial information produced where it is relevant to the action and there is a compelling need for the documents because the information is not otherwise readily available." *Fayda*, 2015 WL 7871037, at *4 (citing *Rahman v. Smith & Wollensky Restaurant Group*, No. 06 Civ. 6198, 2007 WL 1521117, at *7 (S.D.N.Y. May 24, 2007)). Generally, "the party resisting disclosure should bear the burden of establishing alternative sources for the information." *Rahman*, 2007 WL 1521117, at *7 (quoting *United States v. Bonanno Organized*

*Crime Family of La Cosa Nostra*, 119 F.R.D. 625, 627 (E.D.N.Y. 1988)); *Fayda*, 2015 WL 7871037, at *4. In the instant case, the Defendants have "failed to rebut [Plaintiff's] showing that the financial records are relevant and material to its case against them. Nor have they established that [ ] [P]laintiff has an alternative source for the information . . . ." *Fayda*, 2015 WL 7871037, at *4. Further, to the extent Defendants argue that "the subpoena served on Chase with regard to SCS's bank records has no meaningful connection to work performed by the individual GW physician defendants . . . and will not reveal payments made to the majority of the GW physician defendants since payments for their services (creation of peer review reports) were made not by SCS, but rather, by an independent vendor," DE 478 at 3, that contention is likewise insufficient to rebut the Plaintiff's showing of relevance. *See Melendez*, 2003 WL 22434101, at *1 ("conclusory objections as to relevance . . . are insufficient to exclude discovery of requested information.").

The Court also points out that although Defendants' opposition ostensibly seeks to quash the Chase Subpoenas in their entirety, the majority of their arguments continually focus solely on the impermissible scope of the subpoenas, as compared to the "lack of relevance" argument regarding the surviving 177 claims. *See* DE 478 at 2 ("The Plaintiff's subpoenas . . . fail to limit the scope of documents sought to the 177 claim denials"); *id*. at 3 (Plaintiff's non-party subpoenas . . . seek to obtain a decade's worth of unspecified corporate transactions and records, with no relation to the 177 claim denials"); *id*. ("the subpoenas clearly do not relate to the 177 claim denials listed on Exhibit 7 . . . [and] bear no relevance to Plaintiff's damage claims").

Based upon the foregoing analysis, the Court declines to quash the Chase Subpoenas. However, as presently written, the subpoenas are overly broad and unduly burdensome in scope as they bear no relationship to the 177 surviving claims in this lawsuit. Consequently, in

accordance with Rule 45(d)(3), the Court directs that the Chase Subpoenas be modified to include only those bank records having an explicit nexus to the 177 remaining insurance claims necessarily encompassing the three-year period (January 2007 through January 2010) as measured from the earliest (November 3, 2006) and latest (January 18, 2010) Dates of Service enumerated in the Damages Spreadsheet.  *See* SAC, Ex. 7.

Likewise, the Court finds that some of the categories listed are duplicative or otherwise vague and should therefore be stricken.  For instance, categories (a) through (c) of the Chase Subpoenas seek bank statements, copies of canceled checks and deposit tickets.  DE 478, Exs. D, E, F.  However, category (d) seeks

> [r]ecords of payments made on the account(s) and deposits made to the account(s), including but not limited to, copies of checks written on the account(s) and deposited into the account(s), as well as records of debit and credit transfers.  With regard to debit transfers from the account(s), please provide the name of the individual or entity on the payee/transferee account(s), and the name of the financial institution(s) at which the account(s) into which the funds have been transferred is held.

*Id*.  In light of the information sought in categories (a)-(c), the Court cannot discern what specific information in category (d) is not already subsumed within requests (a)-(c).  Indeed, it would seem that the specific type of information sought in category (e) would logically be included in the bank statements, canceled checks and deposit tickets.  Thus, at this juncture, without further particularization, the Court finds that the request contained in category (e) is vague and altogether duplicative of the requests in categories (a)-(c).  Category (e), therefore, is stricken from the Chase Subpoenas.  In addition, category (d), which seeks "[r]etained copies of items deposited," lacks sufficient clarity as to exactly what Plaintiff is seeking.  This request likely will result in information already encompassed within categories (a)-(c) (*i.e*, category (b) seeks canceled checks which in themselves seemingly constitute a "retained copy of an item

deposited").  The Court directs that category (d) likewise be stricken from the Chase Subpoenas.

The Chase Subpoenas, as modified in accordance with the above directives, are to be re-served

upon non-party Chase within fourteen (14) days of the date of this Order.

## VI.    CONCLUSION

For the reasons set forth in this Memorandum and Order, Plaintiff's motion to quash the

GEICO Subpoena   [DE 459] is DENIED.  Defendants' Motion to Quash the Chase Subpoenas

[DE 478] is GRANTED, in part, and DENIED, in part.  Defendants are directed to serve a copy

of this Memorandum and Order on non-party JP Morgan Chase Bank forthwith and to file proof

of such service on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
        March 24, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge