# GARFUNKEL WILD, P.C.
ATTORNEYS AT LAW

111 GREAT NECK ROAD • GREAT NECK, NEW YORK 11021
TEL (516) 393-2200 • FAX (516) 466-5964
www.garfunkelwild.com

JUSTIN M. VOGEL
Partner
Licensed in NY
Email: jvogel@garfunkelwild.com
Direct Dial: (516) 393-2570

**FILE NO.:** 00638.1399

February 7, 2019

**By ECF**

Honorable Joseph F. Bianco
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re: *Sky Medical Supply, Inc. v. SCS Support Claims Services, Inc., et al.*
Docket Number 12-cv-06383

Dear Judge Bianco:

As counsel to the GW Defendants,[1] we write, pursuant to Your Honor's Motion Practice Rules and Magistrate Judge Tomlinson's directives, to request a pre-motion conference in connection with GW Defendants' intent to file a motion that will seek an Order striking the reports submitted by Plaintiff's proposed experts, namely: Dr. David Green (a chiropractor); Dr. James Doghramji (an internal medicine physician); Dr. Jonathan Stein (an anesthesiologist); and Robert Leonard, Ph.D (a linguistics expert). The GW Defendants will also seek to preclude expert testimony by these individuals at trial.[2]

Pursuant to Rule 702 and the seminal Supreme Court decision in *Daubert v. Merrell Dow Pharm., Inc.*, Federal District Courts are charged with the task of determining whether expert testimony "both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). With respect to relevance, "[e]xpert testimony is only admissible if it helps the jury understand facts that are outside common understanding" and concerns an issue in the case. *See, Linkco, Inc. v. Fujitsu Ltd.*, No. 00 CIV. 7242 (SAS), 2002 WL 1585551, at *1 (S.D.N.Y. July 16, 2002); *Schwab v. Philip Morris USA, Inc.*, No. CV.04-1945, 2005 WL 2303823, at *1 (E.D.N.Y. Sept. 22, 2005); *Borgognone v. Trump Plaza*, No. 98-CV-6139 (ILG), 2000 WL 341135, at *5 (E.D.N.Y. Mar. 9, 2000). Under this standard, expert testimony is inadmissible when it addresses lay matters which a jury is capable of understanding and deciding without an expert's assistance. *See, Ebbert v. Nassau Cty.*, No. CV 05-5445 FB AKT, 2008 WL 4443238,

---

[1] Dante Brittis, M.D.; Joseph C. Cole, M.D.; Christopher Ferrante, D.C.; Robert A. Sohn, M.D.; and Julio Westerband, M.D.

[2] As stated in our letter dated February 7, 2019 (DE 627), Plaintiff has not served an expert report from a financial expert, and the time to serve such a report has passed. The GW Defendants respectfully submit that Plaintiff has waived the right to serve a "financial" expert report, and reserves the right to file objections / motions with regard to any financial expert reports that Plaintiff may attempt to serve in the future, should the Court allow Plaintiff to file same.

---

The Hon. Joseph F. Bianco
February 7, 2019
Page 2

at *4 (E.D.N.Y. Sept. 26, 2008). Grafted onto this requirement is the notion that an expert's role is strictly circumscribed to providing opinion testimony, and, may not, under any circumstances, render conclusions that may usurp the fact-finder's role of applying the law to the facts. *See, id.* at *4. The expert reports submitted on behalf of Plaintiff fall far short of this legal framework and the "*Daubert*" standard.

At the outset, the expert reports challenge the GW Defendants' findings that the medical equipment provided by Plaintiff were not "medically necessary." But an expert opinion on that issue is inappropriate since: (a) there is a regulatory scheme for such a determination, *i.e.*, the New York No-Fault Statues; (b) the time to challenge medical necessity was during the initial civil court proceedings. In all instances, the physician Defendants' findings of no medical necessity was upheld by the civil court with regard to all 177 claim denials at issue in this lawsuit; and (c) "medical necessity" is not the issue to be decided at trial. Again, Plaintiff alleges that the GW Defendants engaged in a fraudulent RICO conspiracy by allowing laypeople to create peer reports. As such, expert challenges to "medical necessity" are completely irrelevant.

Turning to Plaintiff's linguistics expert, Dr. Robert Leonard states that he was requested by Plaintiff's attorneys to "examine and analyze Peer Reports and independent medical examination reports (IME) to ascertain whether there was evidence of plagiarism between and among doctors." Based on that directive, Plaintiff will, presumably, seek to elicit trial testimony from Dr. Leonard that the some peer reports contain similar, or even the exact verbiage, as other reports in an effort to bolster Plaintiff's false claim that a third-party layperson drafted the reports. But an "expert" is not needed to opine that the language in one peer report is similar, or the same as, the language in another report; any member of the Jury is capable of making such an observation. The courts have excluded similar testimony from a linguist on the grounds that it "would waste the time of both the jury and the court." *See World Boxing Council v. Cosell*, 715 F. Supp. 1259, 1264 (S.D.N.Y. 1989). As the court further noted, "[a] layman is perfectly capable of reading. . . [defendant's] book and comparing it with the articles he claims to have relied on, without the 'help' of a linguistics expert." *Id.* at 1264.

As an additional basis for a *Daubert* motion, the experts admit to offering opinions concerning peer review reports that are not tied to this lawsuit. Indeed, the expert reports stray from a review of the peer reports linked to the 177 claim denials that make-up Plaintiff's damage claim. Indeed Dr. Leonard admits that he reviewed peer reports that "were not on the spreadsheet [listing the 177 claim denials at issue]" as well as reports authored by the physician Defendants related to No-Fault claims submitted by "other health providers," *i.e.* providers **other than Plaintiff.** Likewise, Dr. Green's report concludes the he would have reached a different outcome on the peer reports the he reviewed. Dr. Green does not, however, opine that the reports were authored by "laypeople." Plaintiff's attempt to introduce opinion testimony on matters unrelated to Defendants' alleged "fraudulent conduct" is improper under *Daubert*.

The expert reports are also improper because they touch upon the ultimate issue to be decided. *GST Telecommunications, Inc. v. Irwin*, 192 F.R.D. 109, 111 (S.D.N.Y. 2000). For instance, Dr. Dogrhamji opines that "[i]t is exceptionally clear to me that these reports were authored by the same person or persons (who clearly is not a doctor), and not by the doctors

The Hon. Joseph F. Bianco
February 7, 2019
Page 3

themselves. It is also clear that the purpose of the reports was not to render a legitimate opinion regarding the medical necessity of the services in question, but to disallow payment for them."[3] But such "expert" testimony does not lay the groundwork for an independent determination by the jury. Rather, opinion testimony of this nature is a conclusion on a factual allegation in dispute, *i.e.* Plaintiff's claim that the peer review reports in dispute contain "false statements" with regard to the authorship of the reports and contain predetermined outcomes. Expert testimony that tells the fact-finder the result it should reach impermissibly "blur[s] the line between opinions based on professional assessments and an opinion on the legality of Defendants' conduct." *Ebbert*, 2008 WL 4443238, at *4.

In addition, Plaintiff offers a report from Dr. Johnathan Stein, an anesthesiologist, whose credentials do not indicate that he has any experience in either drafting or reviewing peer review reports. Moreover, the 177 claim denials at issue relate to medical equipment / devices prescribed for motor vehicle accident victims with soft tissue injuries; none of the 177 peer review reports relate to the provision of anesthesia services. Dr. Stein's report is wholly irrelevant in that regard and he should not be permitted to supply "expert testimony" on matters that are not within his area of expertise.[4] Likewise, Dr. Doghramji's report offers his opinion on the sufficiency peer reports authored pursuant to New York's No-Fault regulations, despite having no apparent connection to New York; his report indicates that his practice and medical affiliations are limited to Pennsylvania. *See Zwillinger v. Garfield Slope Hous. Corp.*, No. CV 94-4009 (SMG), 1998 WL 623589, at *9 (E.D.N.Y. Aug. 17, 1998).

Finally, the expert's reports are flawed because they are not the product of reliable principles and methods. The reports are derived merely from the experts' perusal of certain peer review reports and are largely repetitive.[5] Expert reports that are devoid of an explanation of methodology for their conclusions are improper. *See Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 244 (E.D.N.Y. 2014).[6]

Very truly yours,

/s/ Justin M. Vogel

Justin M. Vogel

cc: All Counsel of Record (*via ECF*)

---

[3] Along those same lines, Dr. Stein states that the reports "are not composed of individually authored, professionally considered opinions..." but are a "product of a letter factory."

[4] The GW Defendants reserve their right to conduct expert depositions in order to, *inter alia*, probe the qualifications of each proposed expert in the event that the reports are not stricken (and testimony prohibited) as a result of the motion that the GW Defendants intend to file.

[5] Ironically, the conclusions reached by Dr. Green in his analysis of individual peer review reports almost all include the same boilerplate language – the same tactic that he opines as "fraudulent" when it comes to reports authored by the physician Defendants.

[6] The limited analysis provided in the expert reports is flatly incorrect, significantly questioning the veracity of the experts' opinions. Indeed, Dr. Doghramji and Dr. Stein state that an article cited by Dr. Westerband in a peer review report doesn't exist. But a 5 minute internet search reveals that the source cited by Dr. Westerband is valid. *See* https://www.ncbi.nlm.nih.gov/plumbed/10796402.

**GARFUNKEL WILD, P.C.**

5084630v.6